## Prichett *et al. versus* Cook.

1. It was agreed by parol that C. was to receive hides from P. at current prices, tan them, return the leather to P., and, after deducting the price of the hides, commission, interest and current expenses, all that the leather would command was to be credited to C. *Held*, that this was a sale to C., and not a bailment.

2. The hides in the possession of C. were levied on as his property: in an interpleader, P., being plaintiff, asked the court to charge, " This was such a contract as the parties might legally make, and the plaintiff is entitled to the verdict." The court charged, " On the facts, about which there is no dispute, the verdict must be for the defendant." *Held*, that it was not error to give binding instructions in view of the plaintiff's prayer, although the contract was in parol.

3. The prayer of the plaintiff was a withdrawing of the contract from the jury and submitting it to the court.

4. Jenkins *v.* Eichelberger, 4 Watts 121, examined.

5. The law abhors secret liens, however attempted to be established.

May 12th 1869.　　Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Franklin county :* No. 57, to May Term 1869.

This was an issue under the Sheriff's Interpleader Act, in which Samuel Baugh and others, trading as Prichett, Baugh & Co., were plaintiffs and claimants, and Jacob B. Cook was defendant. The issue was ordered December 30th 1868. Several judgments had been recovered against John B. Cook ; amongst others, one in favor of Jacob B. Cook for $2500. Executions were issued on all the judgments, placed in the hands of the sheriff November 28th 1868, and certain hides, the property in dispute, levied on.

John B. Cook, the defendant in the executions, who was a tanner residing in Franklin county, was called by the plaintiffs and testified that about May 1868 he owed the plaintiffs beween $2000 and $3000. He went to their place of business and told them he wanted to buy hides for his tannery, but could not buy

12 P. F. SMITH—13

them unless he got them on time.   They agreed to let him have hides on these conditions, viz. :—

"They would furnish me with the hides at the regular cash prices; I should receive the hides, tan them, and return the leather to them; and then, after deducting the price of hides, commission and interest, and other current expenses, all above that the leather would command was to be credited to my account."

They furnished witness four different lots of hides under this arrangement.

On cross-examination the witness stated that bills were given to him in the usual form for each lot of hides as he received them. He paid part of the freight on the hides, and the balance was charged to him; he furnished the bark for tanning the hides and paid for the labor; after he received the hides, the plaintiffs, at his request, paid him $400 and $500 at different times.

Certain bills were exhibited, headed respectively : "Sales of leather on account of John B. Cook" and "J. B. Cook in account current with Prichett, Baugh & Co." These accounts contained charges for hides, freight, carting, insurance, commissions, guaranty, interest and credits for amount of sales.   The hides levied on were hides furnished under the foregoing arrangement.

On the 9th of December 1868 witness signed statements appended to certain bills marked A, B, C, and D, dated respectively June 30th, July 15th, August 4th and September 30th 1868, each being for hides furnished to witness by Prichett & Co.   The bills had been in the hands of witness till December 9th 1868, when he gave them to Mr. Prichett, at his request.   He testified that according to the arrangement he was bound to return to Prichett & Co. the same hides in the shape of leather, and not to sell them to any one else.

The statement, except the date, was the same to each bill, and was as follows :—

"The right of ownership in above described hides to be and remain in said Prichett, Baugh & Co., I agreeing to return to them the entire amount of leather produced from the manufacture.   They are to charge interest and five per cent. commission, and the balance (over and above the amount of invoice of hides, interest and commission), to be credited on my account.

"JOHN B. COOK."

"Philadelphia, Pa., June 30th 1868."

These bills with the appended statements were offered in evidence by the plaintiffs, but were rejected by the court, and a bill of exceptions sealed.

The plaintiffs submitted these points :—

"1. If the jury believe from the evidence that the hides in dispute were furnished by Prichett, Baugh & Co. to John B.

[Prichett *v.* Cook.]

Cook upon the following contract, to wit, &c. (that testified to by Cook), this was such a contract as the parties might legally make, and the plaintiffs are entitled to the verdict.

" 2. If the jury believe from the evidence that the contract between Prichett, Baugh & Co. and John B. Cook was as is stated in the 1st point, then the form in which the bills and accounts between them were made out is of little weight in determining this controversy.

" 3. If the jury believe that the defendant's judgment upon which the hides in dispute have been levied existed prior to the contract and delivery of said hides to said John B. Cook, then the execution-creditors claiming this property are not in a legal position, and have no right to controvert the validity of the alleged contract."

The court (King, P. J.) charged :—

" Upon all the facts in this case, about which there is no dispute between the counsel, the court is of opinion that it is controlled by the case of Jenkins *v.* Eichelberger, 4 Watts 121, and your verdict must therefore be for the defendant."

The jury found for the defendant, and the plaintiff sued out a writ of error.

They assigned for error the rejection of their offer of evidence, the refusal to affirm their points, and the instruction to the jury to find for the defendant.

*Kennedy & Stewart* and *J. McD. Sharpe,* for plaintiffs in error. —A sale is a contract to pass the right to property for money to be paid by the buyer to the seller : Williamson *v.* Berry, 8 Howard 544. To interpret a contract the circumstances at making should be known : Phila. L. Ins. Co. *v.* American L. and H. Ins. Co., 11 Harris 65, and it is to be enforced according to the intention of the parties : Nelson *v.* Von Bonhorst, 5 Casey 352 ; Huthmacher *v.* Harris, 2 Wright 91 ; McCullough *v.* Porter, 4 W. & S. 177. The contract was parol and its interpretation for the jury : McFarland *v.* Newman, 9 Watts 59 ; Sidwell *v.* Evans, 1 Penna. R. 386 ; Welsh *v.* Dusar, 3 Binn. 377 ; Dennison *v.* Wertz, 7 S. & R. 372 ; Moore *v.* Miller, 8 Barr 272 ; Watson *v.* Blaine, 12 S. & R. 131 ; Overton *v.* Tracy, 14 Id. 311 ; Brown *v.* Campbell, 1 Id. 176 ; McDowell *v.* Shotwell, 2 Whart. 26 ; Bomeisler *v.* Dobson, 5 Id. 398 ; Miller *v.* Fitchthorn, 7 Casey 252 ; Edwards *v.* Goldsmith, 4 Harris 43 ; Reynols *v.* Richards, 2 Id. 205. There is a distinction between contracts where possession is delivered to vendee the ownership to remain with vendor till the purchase-money is paid, and when possession is given without any intention to pass title : Martin *v.* Mathiot, 14 S. & R. 214 ; Myers *v.* Harvey, 2 Penna. R. 478 ; Clark *v.* Jack, 7 Watts 375 ; Rose *v.* Story, 1

Barr 195; Chitty on Contracts 391; Sargent *v*. Giles, 8 N. Hamp. R. 325; Chamberlain *v*. Smith, 8 Wright 431; Rowe *v*. Sharp, 1 P. F. Smith 26; King *v*. Humphreys, 10 Barr 217; Vandyke *v*. Christ, 7 W. & S. 373; Henderson *v*. Lauck, 9 Harris 359; Linton *v*. Butz, 7 Barr 89; Lee *v*. Gould, 11 Wright 398; Mallory *v*. Willis, 4 Comstock 153. When the identical thing is to be restored though in an altered form it is a bailment: Wadsworth *v*. Allcott, 2 Seld. 64; Foster *v*. Pittibone, 3 Id. 433; Chase *v*. Washburn, 1 Ohio St. 244; Hydes *v*. Cookson, 21 Barb. 93; 3 Hill (N. S.) 28; Barker *v*. Roberts, 8 Greenleaf 101; Grant *v*. King, 14 Verm. 367; Smith *v*. Wiles, 20 Id.; Downer *v*. Rowell, 22 Id. 347.

*Stambaugh & Gehr*, *W. McLellan* and *F. Kimmell*, for defendant in error, cited Jenkins *v*. Eichelberger, 4 Watts 121.

The opinion of the court was delivered, July 6th 1869, by

THOMPSON, C. J.—It would undoubtedly have been error had the learned judge below given peremptory instructions to the jury to find in favor of the defendant, the contract on which the plaintiffs were claiming to recover, resting wholly in parol, had it not been that they, assuming the contract to be proved in accordance, with their theory, asked him to charge that the plaintiff was entitled to recover. He refused the prayer, and charged that on the undisputed facts in regard to the contract, the defendant was entitled to the verdict.

The fact that the learned judge interpreted the contract adversely to the plaintiff's prayer after having been requested to interpret it by them, is not an error they can complain of now. It does not contravene the maxim, *respondent facto juratores*, for the prayer in the plaintiff's 1st point was in effect a withdrawal of the contract from the jury and a submission of its meaning to the court.

Was there error in the interpretation of the transaction by the court? He was of opinion that the contract was in every essential particular similar to the contract in Jenkins *v*. Eichelberger, 4 Watts 121, and to be ruled by the decision in that case.

Certainly, if there be any distinguishing differences between that and this case they are very slight, too slight it seems to me, to affect the identity of principles which should rule both.

In our case, the contract of the plaintiff was to furnish J. B. Cook with hides at their cash prices, and interest; he to receive and tan them at his own expense, and return the leather to them, who were to sell it, and after deducting the charge for the hides, and interest, a commission of five per cent. for sales and guaranty, and all current expenses to credit the balance to his (Cook's) account,

[Prichett v. Cook.]

a precedent indebtedness.   He not to sell the leather to any other parties.

Pursuant to the agreement, hides were forwarded from time to time by the plaintiff to the defendant, accompanied by regular invoices of weights and prices, as is customary in the sale of goods. The defendant tanned and made returns of leather, and the plaintiff's account of sales show him credited with the net proceeds, deducting expenses, commissions for sales and guaranty.

In all essential particulars this was a sale.   A court could say nothing else of it than this, and had it gone to the jury on the undisputed facts as proved by the plaintiffs, would have been bound to have seen that they did not attribute to it a character that the terms did not indicate, and the law would not sustain.

The hides were either the plaintiffs all the while, notwithstanding they were charged to the defendant and delivered to him, or they were delivered on a sale on credit, and a contract for resale when tanned.   The plan of the parties was sufficiently disclosed in the contract, as proved by the plaintiff's witness, to have been to give to him the advantage and credit of an owner without the liability as owner, to have it seized by creditors.   Had there been nothing of this kind in view, no one would have hesitated a moment in pronouncing the transaction a sale.   The hides were charged, the debt or price to bear interest, and when leather was returned, it was to be sold by the plaintiffs, charging commissions for sales and guaranty and expenses, and crediting the proceeds to the defendant's account.   It would be strange to hear of a man charging interest against his own goods, and more strange to charge commissions for sales and guaranties of sales of them. This the plaintiff's account given in evidence shows was done by them.

In Jenkins v. Eichelberger, *supra*, the contract was of the same nature as the one in hand.   The hides in that case were to be charged to Osborne at cost and interest at 5 per cent. commission. Interest to commence after six months.   When tanned the leather was to be returned to the plaintiff and by him sold.   After deducting from the net proceeds the charge for the hides, the balance was to be paid to Osborne.

The difference between these contracts is entirely unessential, certainly not sufficient to give the character of a bailment, *locatio operis faciendi*, to the one, and that of a sale to the other.   The reasoning of Gibson, C. J., in that case is exhaustive of the position that it was a sale, and in showing that it would be against public policy to hold the contrary, thereby establishing a rule which would impart a delusive credit to property, to the injury of the public who could not know its situation to be other than the property of the possessor.   The law abhors secret liens however attempted to be established.

[Prichett *v.* Cook.]

The learned judge below being called on to pronounce upon the character of the contract in question by the plaintiffs, the parties setting it up could not go beyond the case of Jenkins *v.* Eichelberger. It was in point, and neither overruled nor shaken by any subsequent decision. We therefore approve of his ruling the point as he did.

We think there is no error in the rejection of the testimony proposed, and that the judgment must be affirmed.