# Enterprise Wall Paper Co., Appellant, v. Rantoul Co. et al.

*Contracts—Sales—Construction — Agreement to sell output of manufacturing plant—Furnishing of raw materials by purchaser— Levy by creditor—Sheriff's interpleader by purchaser—Judgment for defendant n. o. v.*

1. The law will not permit any device to elude the principle which forbids a lien to be created on chattels as a security separate from their possession.

2. A wall paper company and a manufacturing company entered into an agreement under which the latter was to "sell and deliver," and the former to "buy and pay for" the entire output of the manufacturing company's plant at certain prices for a period of one year; the raw materials necessary for the manufacture of such paper were to be ordered by the manufacturing company, billed to the wall paper company and the latter was to pay therefor, and payments were to be credited to the account of the wall paper company "against the deliveries of paper"; wages for the production of such paper were to be paid with money furnished by the wall paper company upon receipt of certified pay rolls for same; and all raw materials purchased under such agreement were to remain the property of the wall paper company, but the contract was silent as to the title to the manufactured product. While the companies were operating under this agreement a creditor of the manufacturing company levied on the manufactured paper and raw material in the manufacturing company's plant. The amount of such creditors'

claims was less than the appraised value of the manufactured paper. *Held,* the title to the manufactured product was in the manufacturing company and judgment was properly entered non obstante veredicto in favor of the execution creditor.

Argued Feb. 11, 1918. Appeal, No. 1, Jan. T., 1918, by plaintiff, from judgment of C. P. Chester Co., Aug. T., 1917, No. 14, entering judgment for defendant non obstante veredicto in case of Enterprise Wall Paper Co. v. Nilson Rantoul Co., Inc., and C. W. Rantoul Co., Inc. Before BROWN, C. J., POTTER, STEWART, MOSCHZISKER and FRAZER, JJ. Affirmed.

Sheriff's interpleader.

The facts appear from the following opinion by HAUSE, J.:

On April 27, 1917, defendants recovered judgments against Marley Mills Corporation, in C. P. No. 2, Philadelphia County, aggregating $6,742.45. On these judgments, testatum fi. fas. issued, on May 3, 1917, to the sheriff of this county and levies were made upon personal property in possession of Marley Mills Corporation at its "Beaver Dam" plant. This property consisted of manufactured paper of the value of $14,065— and raw materials for the manufacture of paper valued at $8,389.10 and all of it was claimed by the present plaintiff—Enterprise Wall Paper Company. The usual interpleader issue having been directed, upon trial we instructed the jury to find for the plaintiff for the property in controversy except a small quantity of clay worth $40—to which, it was conceded, plaintiff had no title and for which the jury rendered a verdict for defendants. The value of the property in controversy is fixed by the sheriff's appraisement. Defendants' point for binding instructions having been refused, they now move for judgment, on the whole record, notwithstanding the verdict. The facts are undisputed.

Marley Mills Corporation manufactures paper which is used exclusively for printing wall paper and has a

plant at Beaver Dam, in this county. For some time prior to June 1, 1916, the corporation was financially embarrassed and aid was furnished it by the Enterprise Wall Paper Company, a company engaged in printing and selling wall paper with its place of business in Philadelphia. On May 13, 1916, the Marley company and the wall paper company entered into a written contract to be effective for one year from June 1, 1916. By its terms, the parties, in substance, stipulated as follows: The Marley company agreed "to sell and deliver to the Enterprise company the total output of its paper mill at Beaver Dam, Penna.......for the price or sum of $2.40 per hundredweight, terms net f. o. b. mill" and the Enterprise company agreed "to buy and pay for, at said rate, the output of said mill. All materials necessary for the manufacture of paper were to be ordered by the Marley company, billed to the Enterprise company and the latter company undertook "to pay for such raw materials" and the payments were to be "credited to the account of the Enterprise company against the deliveries of paper" made to it by the Marley company. If raw materials advanced in price from time to time during the year beyond the prevailing cost when the contract was made, the Enterprise company was to pay the advance but should have no credit therefor and if such materials declined in price, the Enterprise company was entitled to the benefit of the decline. "The wages for labor in the production of paper" at the mill were to be paid with money to be furnished by the Enterprise company upon receipt by it of "certified pay rolls" from the Marley company and the latter bound itself not to "sell or agree to sell any part of its product to any other person or persons, firm or corporation, without the written consent" of the former. Moneys advanced or loaned to the Marley company by the Enterprise company prior to the date of the contract were to be credited against the "deliveries" of paper. The concluding two paragraphs of the contract are as follows: "It is further understood

and agreed that all raw materials purchased by the Enterprise company under the terms of this agreement shall be and remain the property of the Enterprise company" and "At the end of the term of this agreement, an account shall be had between the parties hereto and any balance due or owing by one to the other shall be immediately paid and discharged." The parties were operating under this contract at the date of the sheriff's levy which was made prior to the expiration of the year.

As against these execution creditors—defendants— can it be successfully contended that title to the manufactured paper is in the Enterprise company? If this question be resolved in the negative, we need not consider the status of the raw material.

A careful consideration of the written contract leads irresistibly to the conclusion that the manufactured product of the mill is the property of the Marley company and is subject to its creditors' execution process. The initial sentence of the contract is meaningless, even as between the parties, if title to the manufactured product is not in that company. How can the company agree to "sell and deliver" what it proposes to make if it have no title thereto when the process of manufacture is complete? And why should the present claimant agree to "buy and pay for," at a stipulated rate, that which it already owns? When the claimant contracted to "buy and pay" for paper, it undertook to acquire, for itself, the title to a product that belonged to some one else not its own property. The Marley company agreed that it would not, during the term of the contract, "sell or agree to sell any part of its product" to any other person without the written consent of the claimant. Why should the claimant insist on this stipulation if the product was its property as soon as manufactured? Suppose the Marley company, in violation of its engagement, sold a portion or even all of its finished product to a third person who purchased in good faith, is there a doubt but that a perfect title would pass to the purchaser? And

in event of a refusal by the Marley company to deliver the product to the claimant, as rapidly as it was manufactured, would an action of replevin lie to obtain possession? Clearly, no title to the paper vested in the Enterprise company, under the contract, immediately upon its manufacture: Strong, Deemer & Co. v. Dinniny, 175 Pa. 586. The Marley company obligated itself not only to sell but also to "deliver" its entire output and the delivery, required by the contract, in order to vest title in the Enterprise company, was to be a delivery on some means of transportation at the mill without expense to the purchaser. Suppose a fire had destroyed the paper in question while it was in the plant and before any delivery was made or attempted, could it be seriously argued that the loss must be borne by the Enterprise company? Fee v. Emporium Lumber Co., 50 Pa. Superior Ct. 557. The purpose of the parties, as expressed in their contract, is so apparent as to exclude all question as to what they intended and what they sought to accomplish. The Enterprise company wanted paper. The Marley company was without raw material and funds and these the Enterprise company obligated itself to furnish in advance and it also agreed to buy the entire output of the plant at a stipulated price. The Marley company obligated itself to operate its plant, sell and deliver its entire output to the Enterprise company and credit it, on account of the purchase-price, with the moneys expended by it in the purchase of raw materials and moneys advanced for payment of pay rolls and finally "at the end of the term of the agreement, an account shall be had between the parties and any balance due or owing by one to the other" was to be immediately paid and discharged. This was a pure business transaction between buyer and seller. The title to the paper remained in the Marley company, as respects its creditors at least, until a legal delivery was made to the claimant and such delivery had not been made when the execution process took the paper.

The provision in the contract, to the effect that all raw materials purchased by the Enterprise company shall be and remain the property of that company, is significant when it is sought to ascertain even the intention of the parties as to the ownership of the finished product as between themselves. These materials were ordered in the name of, billed to and paid for by the Enterprise company and, until they actually passed into the process of manufacture, the company sought to retain title. As to the manufactured product, however, when the raw materials could no longer be identified, the contract is silent and, as between the parties, there is no escaping the conclusion that title to the product was in the Marley company and it was this property that the Marley company agreed "to sell and deliver" and the Enterprise company agreed "to buy and pay for."

Then, too, the claimant's testimony disclosed that in the operation contemplated by the written paper, an accurate account was kept by its bookkeeper in which was charged to the Marley company all moneys advanced, the value of all materials furnished and the like and credit was given for the manufactured product when deliveries were made. This was consistent only with the relation of debtor and creditor in a buying and selling transaction and at the termination of the contract, when an accounting was required and the balance ascertained, could it be seriously doubted that, if the Marley company had not delivered sufficient manufactured paper to cancel the advances made by the claimant, an action of assumpsit would lie?

The contract, from beginning to end, to our minds most conclusively shows an agreement by one party to manufacture and sell and by the other to buy. It is clearly executory, (Strong, Deemer & Co. v. Dinniny, 175 Pa. 586), and had the manufacturer made delivery such as the law contemplates and the contract required, (Riggs v. Bair, 213 Pa. 402), the product would have

been safe from the assaults of the manufacturer's creditors.

Entertaining these views, judgment is now entered in favor of the defendants, notwithstanding the verdict, for the manufactured product in controversy, in addition to the clay of the value of $40, and its value is ascertained to be, under the admitted facts, fourteen thousand and sixty-five dollars ($14,065) making the total judgment fourteen thousand, one hundred and five dollars ($14,-105), and this judgment shall be fully discharged upon payment of the debt, interest and costs due the defendants on their testatum fi. fas. respectively and of the costs of this interpleader issue.

The lower court entered judgment for the defendants non obstante veredicto.   Plaintiff appealed.

*Error assigned*, among others, was in entering judgment for defendant n. o. v.

*Bertram D. Rearick*, for appellant.

*A. M. Holding*, with him *Samuel W. Cooper*, for appellees.

PER CURIAM, March 11, 1918:

Until the paper manufactured by the Marley Mills Corporation under its contract of May 13, 1916, with the appellant, the Enterprise Wall Paper Company, was actually delivered to that company, it was clearly liable to seizure by execution creditors of the corporation, for the law will not permit any device to elude the principle which forbids a lien to be created on chattels as a security separate from their possession: Jenkins v. Eichelberger, 4 Watts 121; Prichett et al. v. Cook, 62 Pa. 193. The judgment for the defendant in the feigned issue, having been properly entered non obstante veredicto, is affirmed.