## West Side Bank v. Beaver Valley Coal Company.

*Corporations — Checks — Endorsement—Provision of by-laws—Custom—Directed verdict—Effect of, when requested by both sides.*

1. A corporation is liable on checks drawn or endorsed pursuant to a general course of business by one to whom had been left the entire management of the business, even though the checks were endorsed or assigned contrary to the provisions of the by-laws, where it is conceded the company received the benefit of the transaction.

2. The company could not accept the benefits of the transaction and at the same time repudiate the agency.

3. A provision in by-laws that all checks, drafts or orders shall be signed by the treasurer and countersigned by the president, does not include endorsements or transfers of an instrument of which the corporation is the payee.

4. Where both sides request the court to direct a verdict, such verdict will have the same force and effect as if rendered in due course by a jury.

*Assumpsit.* Motion in arrest of judgment and for a new trial. C. P. Luzerne Co., Oct. T., 1924, No. 2.

*T. B. Miller* and *W. A. Valentine,* for plaintiff.

*F. A. McGuigan* and *John H. Dando,* for defendant.

COUGHLIN, J., March 21, 1927.—The defendant coal company, a corporation of the State of Pennsylvania, with offices in Wilkes-Barre, Luzerne County, Pennsylvania, during the months of February and March, 1923, and prior thereto, was engaged in the operation of a coal mine, its treasurer being John E. Foster. The plaintiff bank, of West Pittston, a State banking institution, during the months of February and March, 1923, received from the defendant company three checks, aggregating in amount $22,000, made payable to the defendant coal company or bearer or order, at the Royal Bank of Canada, Joliette branch, by P. H. Desrosiers, maker, said checks being endorsed in blank by the defendant coal company, John E. Foster, treasurer, and one Coplan. The first check was dated Feb. 26, 1923, being for $10,000; the second dated March 3, 1923, for $10,000; and the third dated March 3, 1923, for $2000. These checks were promptly presented by plaintiff bank for payment at the drawee bank, payment refused; and said checks immediately protested by drawee for non-payment. Notice of dishonor and protest was immediately given to the drawer, drawee, payee and endorsers of each of said checks, including the plaintiff bank. Immediate notice was thereupon given by the plaintiff bank to the defendant coal company, and this suit finally brought by the plaintiff bank to recover the amount of said checks.

The affidavit of defence discloses that the defendant coal company claims it received no value, benefit or advantage from the negotiation of the checks sued upon, and that their negotiation by John E. Foster, treasurer, and H.

Coplan was under no authority given by or binding upon the defendant coal company.

Upon the trial of the case, plaintiff bank produced its records and called its cashier and teller, showing that H. Coplan did all the depositing for defendant coal company at plaintiff bank; that the signature and signature card filed with said bank carried the name "Beaver Valley Coal Company, H. Coplan," and that for over a year all the financial business of said defendant company with said plaintiff bank was handled by said Coplan and no other person, and that checks were drawn thereon by Coplan in connection with defendant's business. Bundles of checks were produced by plaintiff, marked Exhibits 10 to 15, inclusive, signed "Beaver Valley Coal Company, H. Coplan," being all the checks drawn on plaintiff bank in carrying on said defendant's business. It was further shown that Coplan obtained drafts and cashier's checks for cash from the plaintiff bank for transfer to the Hazleton Bank, from which the pay-roll, workmen and other bills were paid.

The records of the plaintiff bank, and the testimony of its teller and cashier, disclosed that on March 5, 1923, the second check for $10,000 and the third check for $2000, making a total of $12,000, were deposited to the account of the defendant coal company, against which checks were drawn by said defendant.

As to the first check of Feb. 26, 1923, for $10,000, it appears that the plaintiff bank, upon receipt of said check, issued its check or draft upon the Irving Bank of New York City, made payable to said H. Coplan, for the sum of $10,000, and that said draft was endorsed by H. Coplan in blank and delivered to P. H. Desrosiers, representing Stinson Reid Builders' Supply Company, in payment of an obligation owed by defendant coal company to said supply company, said delivery being made in the presence of the treasurer, John E. Foster.

The defendant coal company then offered to prove by the vice-president and a director of the company that he knew nothing of the transaction, that Coplan had no authority to receive or use the $10,000 and $2000 checks, and had no authority to bind the company as to Stinson Reid Builders' Supply Company. Defendant further offered to put in evidence the by-laws of the company. These offers were rejected by the court.

Defendant, therefore, resting, inquiry was made by the court as to whether or not they expected to go to the jury. "By Mr. Dando" (attorney for defendant coal company) : "No, sir; we submit it on paper." "By the Court: The court denies your points and affirms the plaintiff's point."

The defendant's points, so refused by the court, read as follows:

"1. Under all the evidence, the verdict must be for the defendant.

"2. Under all the evidence, there can be no recovery for the $10,000 evidenced by the draft of Feb. 27, 1923."

Plaintiff's point, affirmed by the court, was as follows:

"Under all the evidence, the verdict must be for the plaintiff for the sum of $22,019.48, with interest from April 6, 1923, or $25,886.10."

Defendant now moves in arrest of judgment and for a new trial, assigning seven reasons therefor:

1. The court erred in not affirming defendant's first point.

2. The court erred in not affirming defendant's second point.

The uncontradicted evidence shows the treasury of the defendant received $12,000, the sum of two of the checks upon which suit has been brought. The uncontradicted testimony, if admissible, of Coplan shows that the $10,000

draft issued for the check deposited was used in the business and for the benefit of the defendant company.

The defendant's third and fourth reasons set forth that:

3. The court erred in denying defendant's motion to strike out the testimony of H. Coplan.

4. The court erred in receiving against defendant's objection the testimony of H. Coplan relative to consideration for draft of Feb. 27, 1923.

Coplan had been the only person who had handled the fiscal affairs of the defendant corporation through the plaintiff bank, making all deposits and drawing all checks, and at times receiving drafts from said plaintiff. The full and absolute management of the affairs of the defendant corporation by Coplan for a period of a year leads to but one conclusion, and that is that he had authority to act. See Landis *v.* Pennsylvania Brick and Tile Co., 87 Pa. Superior Ct. 398.

The question whether or not the defendant corporation received the benefit of the money represented by the checks was a controlling factor in the present suit, and since Coplan had handled all the fiscal affairs of the defendant, his testimony as to what was done with the moneys was admissible, and we see no error in receiving his testimony or refusing to strike out the same.

In Farmers and Merchants National Bank *v.* Mountain Coal Co., 89 Pa. Superior Ct. 146, it was held that it is competent to show that the money received by the bank on the checks had been withdrawn by the defendant's agent in charge of defendant's business and applied to defendant's uses, and this is the case although the money had been deposited by the agent under another corporate name than that of defendant.

The company got the benefit of the money and could not retain it and at the same time repudiate the agency: Scouton *v.* Lumber Co., 261 Pa. 241; Haymaker *v.* Fulton, 271 Pa. 465.

Defendant further complains in reasons five and six that:

5. The court erred in refusing to receive as evidence the by-laws of the defendant company relative to the prescribed method of disbursement by check.

6. The court erred in admitting as evidence the two checks aggregating $12,000, there being no proof of method of endorsement being authorized by defendant company.

Article 7, sections 1 and 2, of the by-laws offered in evidence provide. as follows:

"Section 1. All checks, notes or other methods for the disbursement of money of this company shall be countersigned by the president, or vice-president and signed by the treasurer, and all contracts, deeds and agreements shall be signed by the president or vice-president and secretary and sealed with the seal of the company.

"Section 2. The name of the company shall not be used as drawer, acceptor or endorser except in the legitimate and proper course of the company's business. The moneys or effects of the company shall not be loaned, except as ordered by the directors, who shall have power to make productive idle funds of the company, loaning them on such security as may be deemed satisfactory."

Provision in by-laws that all checks, drafts or orders shall be signed by the treasurer and countersigned by the president does not refer to endorsements or transfers of an instrument of which the corporation is the payee: Schwehm *v.* Trust Co., 257 Pa. 76-79; Putnam *v.* Ensign Oil Co., 272 Pa. 301.

Furthermore, defendant would be liable, though checks were endorsed or assigned contrary to the provisions of the by-laws, if it received the benefit

of the proceeds, or if the course of dealings between plaintiff and defendant on similar checks were shown or if the management of the corporation had been left entirely to one individual: Hartzell v. Mining Co., 239 Pa. 602; Martin v. Lumber Co., 260 Pa. 218.

We are of the opinion that the court committed no error in refusing to receive as evidence the by-laws of the defendant company.

Defendant further complains that:

7. The court erred in not submitting to the jury the question of the truth or falsity of Coplan's oral testimony.

At the close of the trial, both plaintiff and defendant took the view that there was no question for the jury if the court was correct in its rulings during the course of the trial, and requested a direction by the court. The court directed a verdict for plaintiff. The direction having been requested by both sides, the directed verdict has the same effect as if the jury had found in plaintiff's favor after a submission of the case to them: People v. Scannell, 65 N. E. Repr. 165.

In the case of the First National Bank v. Hayes et al., 59 N. E. Repr. 893, 64 Ohio, 100, the court, upon plaintiff's request that the jury be instructed to return a verdict in its favor, and defendants making a like motion in their favor, on consideration, instructed the jury to return a verdict for the defendants, to which the plaintiff excepted, but did not request the court to submit the case to the jury for its determination on the evidence. As therein said: "The question that arises is whether this was error, though there may have been some evidence tending to support the plaintiff's case."

Both parties, on the termination of the evidence, made similar requests for a verdict in their favor, both parties in this way voluntarily submitting the case to the court for its determination upon the evidence.

"The effect of a request by each party for a verdict in its favor clothed the court with the function of the jury, and it is well settled that in such case, where the party whose request is denied, does not thereupon request to go to the jury upon the facts, a verdict directed for either party stands, as would the finding of a jury for the same party in the absence of any direction: . . ." Thompson v. Simpson, 128 N. Y. 270; 28 N. E. Repr. 627.

In Prichett v. Cook, 62 Pa. 193, the following is stated: "It would undoubtedly have been error had the learned judge below given peremptory instructions to the jury to find in favor of the defendant, the contract on which the plaintiffs were claiming to recover resting wholly in parol, had it not been that they, assuming the contract to be proved in accordance with their theory, asked him to charge that the plaintiff was entitled to recover. He refused the prayer and charged that on the undisputed facts in regard to the contract the defendant was entitled to the verdict.

"The fact that the learned judge interpreted the contract adversely to the plaintiffs' prayer, after having been requested to interpret it by them, is not an error they can complain of now. It does not intravene the maxim respondent facto juratores, for the prayer in the plaintiff's first point was in effect a withdrawal of the contract from the jury and a submission of its meaning to the court."

The plaintiff made out a prima facie case by offering in evidence the checks sued upon and certificates of protest for non-payment thereof attached. The burden was, therefore, upon the defendant. See Bank v. Bonsor, 38 Pa. Superior Ct. 275. Coplan's testimony, uncontradicted, was an explanation of the written checks, and the court properly directed the verdict. See Lipper Manuf. Co. v. Morris & Co., 58 Pa. Superior Ct. 611.

West Side Bank *v.* Beaver Valley Coal Company.

We are of the opinion that the trial judge committed no error in the trial of the case, and had the same been submitted to a jury, the jury could have only found for the plaintiff on the evidence submitted, and had a jury found otherwise, the verdict could not have been sustained.

Motion in arrest of judgment and for a new trial is, therefore, refused.

From Frank P. Slattery, Wilkes-Barre, Pa.