In the Matter of LINCOLN INDUS-
TRIES, Inc., Bankrupt.

No. 1768.

United States District Court
W. D. Virginia,
Abingdon Division.

Sept. 4, 1958.

Thomas C. Phillips, of Penn, Stuart & Phillips, Abingdon, Va., for May Co. and Textile Banking Co., Inc.

John M. Keefe, New York City, for Textile Banking Co., Inc.

H. E. Widener, Jr., Bristol, Va., trustee of Lincoln Industries, Inc.

THOMPSON, Chief Judge.

The Lincoln Industries, Inc. (herein referred to as the Bankrupt), was engaged in the manufacture of furniture, school desks and other related merchandise, at Damascus, Virginia, until it was adjudicated bankrupt July 16, 1956, on an involuntary petition filed June 23, 1956.

The May Department Stores Company, a New York corporation, operates a store at Cleveland, Ohio, under the name of The May Company and operates a store at Akron, Ohio, under the name of The M. O'Neil Company. It will be referred to herein as the "May Company".

Cordell Industries, Inc., herein called "Cordell", is a New York corporation en-

gaged in the furniture brokerage business. It and the Bankrupt had interlocking boards of directors, and both were owned by the same financial interests.

Textile Banking Company, Inc., herein called "Textile", is a New York corporation engaged in factoring accounts receivable of manufacturing concerns and in making loans to such concerns with inventory as security.

The bankrupt estate involves several hundred thousand dollars. There are numerous creditors and various classes of liens which necessitated the Referee entering numerous orders. Some of his orders are now before the Court for review.

### Truckload of Furniture Claimed by May Company

In May, 1956, prior to adjudication, the Bankrupt had received two orders for furniture; one direct from The May Company, at Cleveland, in the amount of $4,970.21; one from The M. O'Neil Company, at Akron (owned by The May Company), through Cordell, in the amount of $879.57. These orders aggregated $5,849.78. It was agreed between the May Company, Cordell, and the Bankrupt that the furniture covered by these two orders should be delivered by the Bankrupt in its trucks to the points of destination in Ohio, transportation costs to be paid by May Company.

The Bankrupt issued its invoices for both of these orders and discounted them through its financial broker, Textile, under a factoring agreement, whereby Textile had an admittedly valid factor's lien on all Bankrupt's inventories and accounts receivable. May Company paid Textile the amount of both invoices.

The Bankrupt removed the furniture described in these invoices from its inventory and loaded the same in its truck at its plant site for transportation to the purchasers in Ohio. Some of Bankrupt's employees, whose wages had not been paid in full, refused to allow this truckload of furniture to leave Bankrupt's plant site. The furniture was in the truck at Bankrupt's plant site when bankruptcy ensued.

The Trustee claimed the furniture as part of Bankrupt's estate or, in the alternative, under Section 70, sub. c of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. c. May Company executed indemnifying bonds in the penalty of the two invoices and took possession of the furniture.

The Trustee admits that if the Court finds the furniture belongs to Bankrupt's estate, it is subject to Textile's factoring lien. The Referee held that title to the furniture had passed to the purchaser and ordered the bonds cancelled. This decision is before the Court for review.

> Had the title to the furniture in the truck passed to the purchaser and beyond the reach of the Trustee?

The parties appear to be in agreement that the Ohio law controls in the construction of the sales agreement; one of the purchase orders so provided. If the parties were not in agreement on this point, the Court is of the opinion that the Ohio law governs, since Ohio was the place of performance, i. e., the place delivery of the furniture was required to be made. Hall v. Cordell, 1891, 142 U.S. 116, 12 S.Ct. 154, 35 L.Ed. 956; Louis-Dreyfus v. Paterson Steamships, Ltd., 2 Cir., 1930, 43 F.2d 824, 72 A.L.R. 242; Poole v. Perkins, 1919, 126 Va. 331, 101 S.E. 240, 18 A.L.R. 1509.

Ohio has adopted the Uniform Sales Act; therefore, we must look to that Act in resolving the question of the title to the furniture in the truck.

> "Where there is a contract to sell unascertained goods no property in the goods is transferred to the buyer unless and until the goods are ascertained, * * *." Section 17, Uniform Sales Act, 99 Ohio Laws, p. 417.

The furniture in question was unascertained in contradistinction to specific furniture. Although the purchase orders described the type of fur-

244

niture, they did not identify any specific furniture. The orders could have been filled from any of Bankrupt's inventory which met the description contained in the purchase orders. American Aniline Products v. D. Nagase & Co., 1919, 187 App.Div. 555, 176 N.Y.S. 114; Gile & Co. v. Lasselle, 1918, 89 Or. 107, 171 P. 741.

The situation is analogous to that of an order from an automobile dealer to a factory for a number of cars of a particular model, make and design, which the factory could fill from its inventory of cars meeting those specifications. Indeed, this furniture could have been manufactured after the receipt of these orders and, therefore, could not have been presently ascertained. Ellis & Meyers Lumber Co. v. Hubbard, 1918, 123 Va. 481, 96 S.E. 754; Illustrated Postal Card & Novelty Co. v. Holt, 1912, 85 Conn. 140, 81 A. 1061.

"Where there is a contract to sell unascertained or future goods by description, and goods of that description and in a deliverable state are unconditionally appropriated to the contract, either by the seller with the assent of the buyer, or by the buyer with the assent of the seller, the property in the goods thereupon passes to the buyer. * * *" Section 19, Rule 4(1), Uniform Sales Act, 99 Ohio Laws, p. 418.

Inasmuch as the furniture in question was unascertained, title could not pass to the purchaser until the furniture was unconditionally appropriated to the purchaser. The furniture may have been ascertained when segregated from Bankrupt's inventory and placed in the truck, but it was not unconditionally appropriated to the buyer with buyer's assent. It remained in possession of the seller. The seller could exercise all rights of ownership over it; the buyer had no knowledge that the furniture it ordered had been placed in the truck, and if the seller had chosen to unload the furniture and sell it to any other purchaser, it could have done so without incurring any liability to the purchaser, May Company. See Procter & Gamble Co. v. Peters, White & Co., 1922, 233 N.Y. 97, 124 N.E. 849; Enterprise Wall Paper v. Nilson Rantoul Co., 1918, 260 Pa. 540, 103 A. 923.

■ It cannot be argued that the placing of the furniture in Bankrupt's truck constituted constructive delivery, for the seller, Bankrupt, was required to make actual delivery of the furniture to the purchaser in Ohio in its own trucks. Title to the furniture would not pass to the purchaser until the furniture was delivered to the purchaser in Ohio.

"If a contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon." Section 19, Rule 5, Uniform Sales Act.

" 'Delivery' means voluntary transfer of possession from one person to another." Section 76, Uniform Sales Act, 99 Ohio Laws, p. 434.

■ Delivery to a servant or employee of the seller for the purpose of delivery to the purchaser is no delivery, as the possession remains in the seller.

"A distinction is made between a sale of goods in the hands of a bailee or agent, and goods in the hands of a mere servant. A sale of goods in the possession of a mere servant of the seller, whose possession to all the world is that of his master, though notice of the sale is given to the servant, is not upheld, unless there is some further change of possession, as the possession of a mere servant or hired man is but the possession of the master, and does not, like the possession of other third persons, put the creditor on inquiry." 24 R.C.L. 62, and cases cited.

Since the furniture in question was unascertained and there was no unconditional appropriation thereof with the assent of the purchaser, and no delivery of the furniture to the purchaser as provided in the sales agreement, the Court is of the opinion that the title to the furniture in the truck had not passed to the purchasers and that it is a part of the Bankrupt's estate.

Even if it could be held that title to the furniture passed when Bankrupt segregated it from its inventory and placed it in the truck, certainly there was no delivery or transfer of possession to the purchaser, and if title had passed, the purchaser would have been in the position of having obtained title to the furniture and of having left it in the possession of the seller as the ostensible owner thereof; possession having remained with the Bankrupt, the Trustee would be in the position of a lien creditor of the Bankrupt by virtue of Sec. 70, sub. c of the Bankruptcy Act. United States v. Eiland, 4 Cir., 1955, 223 F.2d 118; B-W Acceptance Corp. v. Benjamin T. Crump Co., 1957, 199 Va. 312, 99 S.E.2d 606.

"The trustee may have the benefit of all defenses available to the bankrupt as against third persons, including statutes of limitation, statutes of fraud, usury, and other personal defenses; and a waiver of any such defense by the bankrupt after bankruptcy shall not bind the trustee. The trustee, as to all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of bankruptcy, shall be deemed vested as of such date with all the rights, remedies, and powers of a creditor then holding a lien thereon by such proceedings, whether or not such a creditor actually exists." Sec. 70, sub. c (11 U.S.C.A. § 110, sub. c) of the Bankruptcy Act.

The order of the Referee holding that the purchaser was entitled to the furniture in the truck and ordering the bond of May Company cancelled is hereby reversed, and an order will be entered requiring May Company or its surety to pay to the Trustee in Bankruptcy the sum of $5,849.78, the amount of the bonds executed by May Company when it took possession of the furniture.

It is agreed between the parties that the said sum of $5,849.78 is to be impressed with Textile's factor's lien and it will be so ordered.

### Labor Liens

Certain employees of the Bankrupt perfected labor liens against the Bankrupt in the amount of $7,591.65, in accordance with Secs. 43–24 and 43–25, Code of Virginia, 1950, as amended. These liens attached to all the real and personal property of the Bankrupt, as provided in the above cited code sections. No one of these labor liens exceeded the sum of $600.

The Referee ordered all the property, both real and personal, sold free from all liens and ordered that the proceeds of the sale be impressed with all of the valid liens existing against the property sold, to which order Textile objected.

Sale of the furniture on which Textile had its lien was completed on or about September 30, 1956. Textile, subject to its objections to the sale free of its factor's lien, cooperated with the Trustee in the sale of the same. The furniture on which Textile had a lien sold for $62,737.50, from which amount Textile agreed that the labor account incident to the protection of the furniture pending the sale, the advertising costs and other miscellaneous expenses incident to the sale, aggregating $3,775.92, could be deducted from the proceeds of the sale of the property on which it had its lien. (Textile, however, did not agree that any part of the general administrative expense, advertising costs, or Trustee's commission should be charged against the proceeds of the sale of this furniture.)

The net amount realized from the sale of this furniture was $58,961.58, which

amount was placed in a separate bank account known as the "furniture account".

Bankrupt was indebted to Textile in the sum of $72,000 as of June 23, 1956, the date these bankruptcy proceedings were commenced.

Reconstruction Finance Corporation, herein referred to as RFC, held a deed of trust on Bankrupt's land, plant and machinery; this property was sold by the Trustee free of liens for the sum of $382,403.53. RFC was paid, from the proceeds of the sale of the property on which it had a deed of trust, the sum of $238,437.93, on January 26, 1957, which amount was payment in full of the principal and interest due RFC, plus attorneys' fees. There was a surplus of $143,965.60 remaining from the sale of this property after the RFC lien had been satisfied in full.

Thus, it appears that the property on which Textile had a lien did not bring a sufficient amount to pay its debt in full and that the property on which RFC had a lien sold for $143,965.60 more than was required to pay the RFC debt in full.

By agreement of the parties, the Referee ordered the laborers' liens paid from the general fund and reserved his decision as to which fund the same should ultimately be charged. It does not appear from the record that the Referee ever designated to which fund the laborers' liens should be charged.

■ The lien of RFC and the lien of Textile were subordinate to the laborers' liens of $7,591.65. Secs. 43–24 and 43–25, Code of Va.1950, as amended.

The Trustee claims that as to Textile he had the right, under the provisions of Sec. 67, sub. c(2) of the Bankruptcy Act, 11 U.S.C.A. § 107, sub. c(2), to be subrogated to the laborers' liens and to have the laborers' liens charged against the "furniture account", which was insufficient to satisfy Textile's lien. The Trustee did not make a subrogation claim against the principal amount paid to RFC, although its lien was on personal property as well as real estate, but paid the RFC lien in full, plus attorneys' fees.

■ Under Sec. 67, sub. c(2) of the Bankruptcy Act, only so much of any labor lien as is in excess of the restricted amount could pass to the Trustee; since no one labor lien exceeded $600 (the limitation prescribed by Sec. 64, sub. a(2), 11 U.S.C.A. § 104, sub. a(2)), there was no excess of the restricted amount to pass to the Trustee. It follows that the Trustee's claim for subrogation to the laborers' liens against Textile is without merit.

■ The equitable principle of marshaling assets is another impelling reason for holding that the Trustee should not be permitted to charge the amount of laborers' liens against Textile. Here the laborers' liens were the first liens on (1) the land, plant and machinery on which RFC held a lien, (2) the inventory on which Textile held a factor's lien, and (3) the assets of the Bankrupt on which neither RFC nor Textile had a lien, which sold for $36,076.66; the laborers had the first lien on all three of these separate classifications of property. This is true because the laborers' liens, pursuant to Secs. 43–24 and 43–25, Code of Va.1950, as amended, are made a prior lien on all the Bankrupt's property. See Mathews v. Meyers, 1928, 151 Va. 426, 145 S.E. 352.

■ Textile had a lien only on Bankrupt's inventory and accounts receivable. There were ample funds from the proceeds of the property on which RFC had its lien to pay first the laborers' liens in full and to discharge the RFC lien in full, and to leave a substantial surplus for subsequent lienors and creditors. There were insufficient funds realized from the sale of the property on which Textile had a lien to pay its indebtedness in full. Equity demands that the principle of marshaling assets be applied.

"* * * (T)he equitable doctrine of marshaling * * * rests upon the principle that a creditor having two funds to satisfy his

debt may not, by his application of them to his demand, defeat another creditor, who may resort to only one of the funds * * *." Merchants' & Mechanics' Bank v. Sewell, 5 Cir., 1932, 61 F.2d 814, 816.

In Remington on Bankruptcy, Sec. 2522.-8, at p. 396, it is stated:

> "Where there are various liens against certain property, but some of the liens extend to and cover other property as well, the bankruptcy court, by virtue of its underlying equity jurisdiction, may require, where equitable, that the holder of any particular lien resort to other available property subject to his lien before having recourse to the particular property."

See also 12 M.J., Marshaling Assets and Securities, Sec. 4 (rev. ed.) 1950, pp. 425, 426.

The Referee held that the Trustee was not entitled to be subrogated to the laborers' liens against Textile, but did not decide to which fund the amount of the laborers' liens should be charged. The Referee's finding, "the lien of Textile Banking Company is considered valid and not to be subordinated to the claim of wages paid by the Trustee", is hereby affirmed; the Court being of the opinion that the amount of the laborers' liens, $7,591.65, should be charged against the fund realized from the sale of the property on which the RFC had a lien, an order will be entered directing the Trustee to charge the amount of the laborers' liens to the fund realized from the sale of the property on which RFC had a lien, and ordering that no part of the laborers' liens be charged to the funds realized from the sale of the property on which Textile had its lien.

### Administrative Costs

The Referee held that the proceeds from the sale of the property on which Textile had a lien should bear a proportionate part of the costs of the sale and administrative costs to include Trustee's commission, a proportionate part of the advertisement, and 2% of the administrative expense. Counsel agree that these items would amount to approximately $2,100.

Textile objected to the sale by the Bankruptcy Court of the property on which it had its factor's lien; the Referee ordered the property sold over its objection. Textile's failure to appeal from the Referee's decision did not constitute an agreement by Textile to the sale. Neither did Textile's cooperation with the Trustee in the sale constitute consent to the sale. RFC v. Rhodes, 5 Cir., 1954, 214 F.2d 606, 48 A.L.R.2d 1339. Textile did agree that certain items of expense incident to the protection of the furniture and advertising of the sale and other items, in the amount of $3,775.92, could be paid from the proceeds of the sale of the furniture on which it had its factor's lien, but at no time did it agree that the items above mentioned, in the approximate sum of $2,100 in addition to the $3,775.92, could be paid therefrom.

In Remington on Bankruptcy, Sec. 2609, at p. 135, it is stated:

> "It is well settled that, ordinarily, general bankruptcy administration expenses are not chargeable against proceeds from the sale of assets covered by the mortgages or liens to the detriment of the lienholder or secured creditor." (Citing numerous cases.)

Further, in 4 Collier on Bankruptcy, Sec. 70–99, at p. 1614:

> "There is a general agreement in the decisions, however, that 'where the lienholder has objected to the sale of the property, free and clear of his lien, and the administering of it in bankruptcy, * * * he cannot be charged with the general expenses of administration, including referee's, trustee's and counsel fees, or the expenses of the care and preservation of the property, which were not incurred with his consent, except when the latter were for his benefit, as distinguished from the general creditors, and were such as he would of neces-

sity have had to incur; nor with any costs and expenses of the sale of the property in excess of those which he would have been required to expend in order to foreclose his lien in an appropriate forum of his own choice.' " (Citing numerous cases.) See also Virginia Securities Corp. v. Patrick Orchards, Inc., 4 Cir., 1927, 20 F.2d 78; Mills v. Virginia-Carolina Lumber Co., 4 Cir., 1908, 164 F. 168.

■ Therefore, the Court is of the opinion that the Referee erred in requiring Textile to pay the aforesaid items of approximately $2,100. However, there is no sound reason for making the Bankruptcy Court a charity court in which lienholders can realize upon the sale of their securities, without the costs they would ordinarily be charged in liquidating their securities in the State court. See Remington on Bankruptcy, Sec. 2610, p. 144. With the numerous liens on the Textile property, including the laborers' prior liens, it is fairly certain that Textile could not have enforced its lien without a creditors' suit in the State court to ascertain the priorities of the several liens and the respective rights of the parties. If a creditors' suit had been pursued a Special Commissioner of the Court would have been appointed to sell the property after the respective rights of the lienholders had been ascertained. Sec. 8–669, Code of Va., 1950, as amended, provides that a Special Commissioner shall receive 5% of the first $10,000 and 2% of the residue of any such sale. Applying this formula to the net amount of the sale, $58,961.58, this item of cost alone would amount to $1,479.23, and there would have necessarily been other costs such as bond premiums, court costs, and the like. The Court is, therefore, of the opinion that the fund realized from the sale of the property on which Textile had its factor's lien, should be charged with the sum of $1,600, which is the amount the Court finds it would have cost Textile to liquidate its security if the Bankruptcy Court had not done so. The Trustee should transfer the said sum of $1,-600 from the "furniture account" to the Trustee's "general account".

### Guarantor Question

Textile is in the business of loaning money and discounting invoices, whereby, for a consideration, it assumes the seller's credit risk. Textile had such an arrangement with Bankrupt, but before any of Bankrupt's invoices were discounted Textile required the Bankrupt to enter into a factoring agreement pursuant to Section 55–145, Code of Va., 1950, as amended, whereby Textile would have a factor's lien on all of Bankrupt's inventory and accounts receivable. Textile further required Cordell (Bankrupt's affiliate) to guarantee the payment of all Bankrupt's invoices discounted by Textile. Textile also discounted other invoices for Cordell. Textile required Cordell to keep a substantial balance on deposit with Textile as security for the payment of the invoices discounted by it.

On July 25, 1957, Cordell had $30,000 in its "guaranty account" with Textile. It appears that Cordell is also indebted to the Bankrupt. Cordell is not a party to these proceedings.

The Trustee, upon learning that Textile held $30,000 of Cordell's funds, made a motion before the Referee to attach the Cordell funds held by Textile for application to the payment of Cordell's indebtedness to the Bankrupt. No action appears to have been taken on the Trustee's motion; however, Textile immediately after this motion was made, on the 25th of July, 1957, applied the net balance of the $30,000 Cordell fund it held in Cordell's "guaranty account" as a credit upon the debt owed to it by the Bankrupt.

The record as to the exact amount of Bankrupt's indebtedness to Textile as of the date of the bankruptcy proceedings is very indefinite; no transcript of the proceedings was made and the pleadings on this point are conflicting. However, counsel for Textile and the Trustee, in their argument of this case before the Court, agreed that the approximate amount due Textile as of the date of

filing the petition was $72,000. The Court, therefore, finds as a fact that the amount due Textile by the Bankrupt on June 23, 1956, was $72,000.

The furniture covered by Textile's factor's lien was sold on September 30, 1956, for the net sum of $58,961.58. From this amount there should be deducted the sum of $1,600 which the Court has held should be charged against this fund as costs. There will remain a balance of $57,-361.58 as the true net amount realized from the sale of the furniture on which Textile had its factor's lien, to be applied to the principal of Bankrupt's indebtedness, which amount is insufficient to pay Textile's debt of $72,000 in full. Since the security on which Textile had its lien brought an insufficient amount to pay the principal of Textile's indebtedness as of the time when the security was sold, Textile is not entitled to collect post-bankruptcy interest from the Bankrupt. Sexton v. Dreyfus, 1911, 219 U.S. 339, 31 S.Ct. 256, 55 L.Ed. 244; In re Tele-Tone Radio Corp., D.C.N.J.1955, 133 F.Supp. 739. However, as between Textile and Cordell, it appears that Cordell, under its guaranty agreement with Textile, is liable to Textile for post-bankruptcy interest and attorneys' fees.

On March 11, 1957, the Referee ordered the Trustee to pay to Textile $43,-500 from the "furniture account"; after this sum was credited to the $72,000 there remained a balance due by Bankrupt to Textile of $28,500.

On July 25, 1957, Textile applied as an additional credit on Bankrupt's indebtedness the net amount of $30,000 which it held in Cordell's "guaranty account". However, the exact amount of this credit on Bankrupt's principal indebtedness does not appear from the record and, in the absence of this proof, the Court has calculated the credit from information gleaned from the record at large.

The principal of the debt due by Bankrupt to Textile on June 23, 1956, was $72,000. On March 11, 1957, the Trustee paid Textile $43,500 leaving a balance due on the principal indebtedness of $28,500. Textile was entitled to collect interest from Cordell on the $72,000 from June 23, 1956, until March 11, 1957, in the amount of $3,072. The net proceeds of the $30,000 in the "guaranty account" was credited on July 25, 1957. The interest on $28,500 from March 11, 1957, until July 25, 1957, is $636.50. The total interest which Textile was entitled to recover from Cordell from the date of bankruptcy until the net credit from the "guaranty fund" was made is, therefore, $3,708.50. Textile had incurred attorneys' fees in the sum of $4,200 in connection with this proceeding, for which Cordell was liable under its guaranty agreement. The attorneys' fees of $4,200 and the interest of $3,708.50 total $7,908.50. When this amount is subtracted from the $30,000 "guaranty fund", there remains $22,091.50 as a credit on the principal amount due by Bankrupt to Textile.

The $30,000 "guaranty fund" of Cordell was held by Textile as security for Cordell's guarantee to Textile of the payment of the invoices discounted by Textile. Textile was not obligated to use Cordell's "guaranty fund" as a credit on Bankrupt's indebtedness, but it elected to do so on July 25, 1957, and having done so it thereby reduced the amount Textile could recover (for its own benefit) from the Bankrupt by the amount of the credit of $22,091.50. Therefore, as of July 25, 1957, after crediting the sum of $22,091.50 to the balance of $28,500 due Textile from Bankrupt, there remained a balance of $6,408.50, chargeable against the "furniture account", due Textile from Bankrupt. Textile will then have received the principal sum of its indebtedness of $72,000 and interest thereon from date of bankruptcy to July 25, 1957, and $4,-200 as attorneys' fees. If Textile claims that Cordell under its guaranty agreement is further indebted to Textile for interest subsequent to July 25, 1957, or for other items, it, of course, has the right to assert its claim against Cordell for the same.

After deducting the $1,600 charged to the cost of liquidation, the Trustee has in the "furniture account" the sum of $13,861.58 as the true net balance realized from the sale of the furniture on which Textile had its factor's lien. To this sum shall be added the amount of the May Company bond, $5,849.78. The Trustee will then have $19,711.36 in the "furniture account". From this amount there shall be deducted the sum of $6,408.50, balance of the principal indebtedness owing to Textile from Bankrupt. There will remain $13,302.86 in the "furniture account".

Cordell's funds held by Textile in its "guaranty account" having been used to reduce the indebtedness of Bankrupt to Textile, equity requires that Cordell be subrogated to the rights of Textile in the balance of the proceeds in the "furniture account" realized from the sale of the furniture on which Textile had its factor's lien in the amount of $13,302.86.

However, it appears from the record that Cordell is indebted to the Bankrupt in some unascertained amount. The Trustee will, therefore, retain the said sum of $13,302.86 in the "furniture account" until it is determined if Cordell is indebted to Bankrupt. If Cordell is indebted to the Bankrupt, the Trustee shall apply so much of the $13,302.86 to the payment of said indebtedness as may be required to satisfy the same, and, if there is a residue of said $13,302.86 after satisfying such indebtedness, the Trustee shall pay the same to Textile to be held by Textile for the benefit of Cordell. Young v. Gordon, 4 Cir., 1914, 219 F. 168; Swarts v. Fourth Nat'l Bank, 8 Cir., 1902, 117 F. 1.

The question of the indebtedness and the amount thereof due by Cordell to Bankrupt, if any, will be remanded to the Referee for appropriate proof and determination of this question.

The Trustee will pay to Textile from the "furniture account" the sum of $6,408.50, being the balance due it. Textile having been paid the full amount it is entitled to recover from the Bank-rupt it, therefore, no longer has a lien for its own benefit on the balance in the "furniture account". The Court has held that Cordell is subrogated to Textile's lien on the balance in the "furniture account" and, if it appears that Cordell is indebted to the Bankrupt, the Trustee shall apply so much of the balance in the "furniture account" to the payment of Cordell's indebtedness to the Bankrupt as may be necessary to satisfy the same, and the Trustee shall pay the residue, if any, to Textile to be held for the benefit of Cordell. Young v. Gordon, supra; see Ivanhoe Building & Loan Assoc. v. Orr, 1935, 295 U.S. 243, 55 S.Ct. 685, 79 L.Ed. 1419. Textile shall have no rights in the balance in the "furniture account" until the indebtedness of Cordell, if any, to the Bankrupt has been satisfied therefrom.

An appropriate order will be entered in accordance with these findings.