AMERICO WHOLESALE PLUMBING SUPPLY CO. *v.* TRAJCEVSKI ET AL.

(No. 86 CVF 11073—Decided April 16, 1987.)

Cleveland Municipal Court.

*Judd H. Gross,* for plaintiff.
*Conrad J. Morgenstern,* for defendants.

ADRINE, J. The plaintiff has brought this action on an account stated, alleging that the defendants, jointly and severally, owe it a total of $3,758.18 for purchases made at the plaintiff's place of business. The defendants maintain that they never received nor benefited from the materials which the plaintiff alleges were purchased from it and, as a consequence, deny any obligation to the plaintiff for them.

As its name implies, the plaintiff is a wholesaler of plumbing supplies. In Greater Cleveland, it is quite well-known and serves as a major source of such supplies for the area's construction industry.

The defendants are independent plumbing contractors. Their company, Reliable Construction, consists of its founder, Marko Trajcevski, and his son, Spiro "Steve" Trajcevski.

At trial it was established that for an extended period of time the defendants had worked as subcontractors for the now-defunct Hillcrest Construction Company (hereinafter "Hillcrest"). As such, they were known to, and did business with, the plaintiff. On occasion, the defendants would order materials from the plaintiff and have them billed to Hillcrest, with Hillcrest's approval.

In early 1985, the defendants' relationship with Hillcrest began to deteriorate. Hillcrest was experiencing severe financial displacement and became hard-pressed to pay its subcontractors. During this period, the defendants had approximately $38,000 worth of on-going projects with Hillcrest.

One of these projects involved the materials which are the subject of this lawsuit. Up until this time, all of the defendants' business with the plaintiff had been done as a subcontractor of Hillcrest. However, with regard to the instant order, defendant Spiro Trajcevski utilized an account which defendants had established with the plaintiff. Because all of the materials which the defendants wanted had to be specially ordered, and because the defendants lacked a credit history with the plaintiff, a $1,000 deposit was required upon the placement of the order.

These materials were intended for use at a job site located in South Euclid, Ohio. Testimony given during the trial reflected, however, that the plaintiff was not provided with a delivery address at the time the order was placed.

Defendant Spiro Trajcevski had at least three additional contacts with the plaintiff, through an order clerk, subsequent to the placement of this order. The first was a change in the order which he initiated. The second was a call received at his home requesting that he call the clerk. The third was his return call which was in response to the second contact.

Upon returning the clerk's call, Spiro Trajcevski was informed that half of the materials which had been ordered had arrived. He testified that he informed the clerk at that time that the complete order was to be delivered to the "job site." He further testified that, because of the extent of the plaintiff's dealings with Hillcrest, he believed that the clerk knew that the materials were for Hillcrest's South Euclid job on which the defendants were subcontractors.

While Hillcrest had allowed the defendants to use its credit with the plaintiff, nothing presented to the court indicated that defendants afforded the same privilege to Hillcrest. In fact, the contrary appears to have been the case.

The evidence is in conflict with regard to whether the defendants directed or authorized the plaintiff to deliver the subject materials to the corporate offices of Hillcrest Construction Company. Common sense would appear to favor the defendants' position on this issue.

The evidence at trial reflected that the materials under discussion here were heavy, bulky and unwieldy. The unrefuted testimony of Spiro Trajcevski indicated that the plaintiff's standard practice was to deliver the goods it sold to a designated location, free of charge. Had the defendants desig-

nated Hillcrest's corporate offices, they then would have been faced with the additional expense of having the goods transported to South Euclid for installation. The defendants' purposeful incurrence of such an avoidable additional expense is, at best, unlikely.

Also, since the defendants and Hillcrest were, at the time of this transaction, embroiled in a controversy over payment, common sense would seem to indicate that the defendants would not run the risk of weakening their position by having materials, for which they were responsible, delivered to Hillcrest.

It is clear, however, that Hillcrest did receive the goods. Not only did Hillcrest receive the goods, it used them to complete the South Euclid project.

The defendants placed the original order on April 11, 1985. On April 17, 1985, the defendants were told by the plaintiff that their order would not be ready for delivery for an additional two weeks. On April 20, 1985, because of their pay dispute, the defendants left their South Euclid job, along with all of their other Hillcrest projects.

On April 21, 1985, ten days after placing the original order, the defendants went to the plaintiff to ask that the order be held and not delivered. They were told that the delivery had already been made to Hillcrest's corporate offices.

While the plaintiff maintains that the goods involved here were delivered to Hillcrest upon the defendants' specific instruction, this fact was not confirmed by the proof presented at trial. The order clerk who allegedly took the instruction had no clear recollection as to where the materials were to be delivered. The plaintiff's credit manager admittedly received his information regarding delivery secondhand from the order clerk. The defendants claim that the *only* instructions which they gave the plaintiff concerning delivery were that the materials were to be delivered to the "job site."

Under this set of facts and circumstances, the court concludes that the plaintiff must shoulder the loss which it suffered. The plaintiff in order to prevail was required to establish by a preponderance of the evidence that it tendered delivery at the location specified under the contract. The plaintiff has failed to meet its burden on this issue.

In *In re Lincoln Industries, Inc.* (W.D. Va. 1958), 166 F. Supp. 240, 244, 10 O.O. 2d 231, 234, reversed in part on other grounds (C.A. 4, 1959), 265 F. 2d 446, a United States District Court held, citing the Uniform Sales Act:

" 'If a contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, * * * the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon.' Section 19, Rule 5, Uniform Sales Act."

In the instant case, the agreement called for the goods to be delivered to the defendants at a place that they had designated. The evidence proves that the material was never delivered to the defendants. Conversely, the evidence *does not* prove that the defendants instructed the plaintiff to deliver the goods to Hillcrest.

By law, therefore, the risk of loss remained with the seller, which, likewise, retained title unless and until delivery was tendered to the defendants in accordance with the contract. See R.C. 1302.51(A).

For the foregoing reasons, judgment is hereby entered in favor of the defendants against the plaintiff on its complaint. The plaintiff is ordered to pay the costs.

*Judgment accordingly.*