# Staunton

## B-W Acceptance Corporation v. Benjamin T. Crump Company, Inc.

September 6, 1957.

Record No. 4651.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*Howard C. Vick* (*Denny, Valentine & Davenport,* on brief), for the plaintiff in error.

*Joseph C. Carter, Jr.* (*Hunton, Williams, Gay, Moore & Powell,* on brief), for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This action was brought by B-W Acceptance Corporation, plaintiff, against Benjamin T. Crump Company, Incorporated, defendant, for damages for alleged misrepresentation in a trust receipt transaction, and involves certain provisions of the Uniform Trust Receipts Act. Acts of Assembly, 1944, ch. 368, p. 541, now codified as Title 6, ch. 11, Code 1950, §§ 6-550 *et seq.*

The case was tried by the court without a jury on the pleadings, exhibits therewith and a stipulation of facts. For reasons stated in writing the court found for the defendant and entered in its favor the judgment from which the plaintiff now appeals. The material facts so established are these:

The plaintiff and defendant entered into a distributor agreement dated January 20, 1954, by which plaintiff agreed to purchase from defendant "wholesale instruments", meaning notes, trust receipts, chattel mortgages and other obligations "arising out of the sale and/or delivery" of Norge household appliances by defendant Crump on a floor planning arrangement to its dealers who were of acceptable credit and financial responsibility. The agreement provided that if the plaintiff should repossess or come into possession of any such appliances covered by the obligation purchased, defendant would repurchase same from the plaintiff and pay therefor in cash an amount equal to the unpaid balance of such obligation.

In 1953 Crump sold and delivered to Lee's Appliances, Incorpor-

ated, a retailer, hereinafter referred to as Lee, certain Norge appliances on open account for $1,487.01. About March 24, 1954, when the unpaid balance on these appliances was $1,338.81, Lee and Crump agreed between themselves that rather than Crump's repossessing the appliances or taking other action to collect this debt, Lee would execute a trust receipt and promissory note, Crump would prepare an invoice for the appliances, and these documents would be delivered to Acceptance Corporation for financing.

Actual possession of the appliances remained with Lee from the time of the original delivery in 1953 and there was no transfer between the two after that date.

The invoice so prepared listed the appliances as being sold by Crump to Acceptance Corporation and shipped to Lee on March 24, 1954. The note executed by Lee was for $1,338.81, dated March 24, 1954, and payable to the order of Acceptance Corporation. The trust receipt also dated March 24, 1954, listed the appliances and stated the release price of each. It was executed by Lee, which therein acknowledged receipt of the appliances from Acceptance Corporation, acknowledged them to be the property of Acceptance Corporation and agreed to take and hold them for the purpose of storing them, to return them on demand, and not to sell or otherwise dispose of them until after payment of the amounts shown in the release price column.

On March 25, 1954, Crump forwarded these papers to Acceptance and the latter, without knowledge of the fact that the appliances had been sold and delivered to Lee in 1953, or that Lee and Crump had agreed as above stated, but relying on the representations of Crump as shown in the invoice, purchased the note and trust receipt, paying therefor to Crump $1,305.34.

It is stipulated that if Acceptance Corporation had known the true facts of the transaction between Crump and Lee it would not have made the purchase.

On August 10, 1954, Lee was adjudicated a bankrupt, and on that day there remained unpaid on the promissory note $1,049.78. At the first meeting of creditors the trustee in bankruptcy had stated that Acceptance Corporation had a valid lien on the appliances in Lee's possession under the trust receipt; but on a more thorough investigation he reported to the referee that Acceptance Corporation had failed to file a statement of its intention to deal in trust receipt transactions with the bankrupt in the manner required by § 6-562 of the

Act, and therefore in his opinion held no valid lien. On October 8, 1954, after a special show cause order to Acceptance and Crump, and no objection being filed by them, the lien of Acceptance was adjudicated by the referee to be void as against the trustee in bankruptcy.

It is stipulated that Acceptance Corporation ascertained the facts about the 1953 sale and delivery of the appliances for the first time in connection with the bankruptcy proceedings; and further that the validity of the trust receipt transaction in its inception was not considered by the trustee or referee.

[■ As held by the trial court, the plaintiff's action is in tort based on fraud. It is not argued that there was an actual fraudulent intent on the part of the defendant, but the plaintiff contends that there was constructive fraud committed by the defendant in misrepresenting the facts as to the date of the delivery of the goods to Lee and thereby attempting to change an old open account transaction into a trust receipt transaction which was in fact invalid and which the plaintiff would not have accepted if it had known the true facts.

It has been held for a long time in Virginia that when one represents as true that which is not true, and another relies thereon to his damage, the latter may recover for the false representation whether it was knowingly or innocently made. *Union Trust Corp.* v. *Fugate*, 172 Va. 82, 200 S. E. 624; 8 Mich. Jur., Fraud and Deceit, § 18, p. 709.

The intent of the party making the representation is immaterial. The point is whether the other party was misled. Whether the representation is made innocently or knowingly, if acted on, the effect is the same. In the one case the fraud is constructive; in the other it is actual. *Packard Norfolk* v. *Miller*, 198 Va. 557, 95 S. E. 2d 207.

■ The trial court held that the agreement between Crump and Lee was tantamount to a delivery of the goods to Lee simultaneously with the execution of the trust receipt, was a sufficient compliance with the requirements of § 6-551 (1) (a) of the Act in that respect, and that what was done resulted in a valid trust receipt transaction and did not constitute fraud which entitled the plaintiff to recover.

The Uniform Trust Receipts Act, as related to the facts of this case, provides in § 6-551 that a trust receipt transaction within the meaning of the Act is any transaction to which the entruster (B. W. Acceptance Corporation) and a trustee (Lee's Appliances, Incorporated) are parties, for the purpose of selling goods, whereby the entruster, or a third person (Benjamin T. Crump Company, Inc.)

"delivers" to the trustee goods in which the entruster, for new value, "by the transaction," acquires a security interest. The delivery of the goods must be against the signing and delivery by the trustee of a writing designating the goods and reciting that a security interest therein remains in or passes to the entruster.

Security interest means a property interest in goods, limited to securing the performance of the obligation of the trustee or a third person to the entruster, and includes the interest of a pledgee, and title whenever such title is in substance taken or retained for security only. § 6-550 (12). The security interest of the entruster may be derived from the trustee or from any third person, and by pledge or by transfer of title or otherwise. § 6-551 (1).

It is clear that new value, $1,305.34 in fact, passed from the entruster, Acceptance Corporation, for the security interest which it thought it was acquiring in the goods by the transaction. The only element essential to a valid trust receipt transaction which was lacking in this transaction was a present delivery of the appliances.

We think both the letter and the spirit of the Act contemplate and require a present delivery of goods as part of the transaction in which the security interest was acquired. In the Prefatory Note to the Act by the Commissioners on Uniform State Laws, the reasons for the Act and what the Act does are summarized. Among other things it is stated that the Act carefully delimits the range of transactions covered, and "the door is not opened to substituting this informal transaction for the ordinary chattel mortgage;" that the Act "leaves the existing law of chattel mortgages and conditional sales unchanged, except in peculiar cases which need special coverage. * * Sec. 2(1), and Sec. 1 [§ 6-551 (1) and § 6-550], * * limit the effectiveness of the transaction to the case of a new acquisition by the dealer, as to which the new possession cannot be expected to mislead his creditors, or to the turning back to him of security already pledged, while Sec. 14 [§ 6-563] limits the financer's protection to new value given as a part of the transaction." Uniform Laws Annotated, 9A, pp. 277-8.*

As stated in *In Re Chappell*, 77 F. Supp. 573, 576, " 'the act is carefully drawn to apply to new financing of new acquisitions only, so its use is not permissible in all the usual chattel mortgage or con-

---

* Instructive articles on the trust receipt transaction at common law and under the uniform act by Professor George W. Bacon are to be found in 5 Fordham Law Review at pp. 17 and 240.

ditional sale transactions.' " It was held that under the facts of that case "the transactions between the bankrupt and the bank were not transactions in the acquisition of new goods, but were attempts to give security to the bank in goods previously acquired by the bankrupt. Accordingly, the bills of sale and other instruments must be construed as chattel mortgages." See also *In Re San Clemente Electric Supply*, 101 F. Supp. 252; Dissenting opinion (on another ground), *Klett v. Security Acceptance Co.*, 38 Cal. 2d 770, 791, 242 P. 2d 873, 887.

The agreed facts in the present case are that these goods had been sold and delivered by Crump to Lee some time in 1953 on open account and Lee still owed Crump practically all the purchase price. The title to and possession of the goods had thus passed to Lee in 1953 and had remained with Lee from that time "and there was no transfer between the two after that date." All that happened afterwards was that about March 24, 1954, the day before the invoice was made up by Crump and the note and trust receipt were signed by Lee, Crump and Lee agreed that Crump would not repossess the appliances (on which it had no lien and to which it had no title) or take other action to collect its debt, but Lee would execute the trust receipt and note and Crump would deliver these and the invoice to the plaintiff. Crump did not then own the appliances which it invoiced to Acceptance Corporation, nor did it then ship these appliances to Lee as stated in the invoice. What they did was only a mental exercise, insufficient to constitute a present delivery of goods by Crump and a new acquisition of goods by Lee so as to make a valid trust receipt transaction as defined by the Act.

By the transaction described in the agreed facts Lee only gave a lien to Acceptance Corporation on appliances already owned by and in the possession of Lee and which remained undisturbed in its possession, and the transaction therefore amounted to no more than a chattel mortgage. 53 Am. Jur., Trust Receipts, § 4, at p. 964; 10 Am. Jur., Chattel Mortgages, § 15, pp. 726-7; 14 C. J. S., Chattel Mortgages, § 9 at p. 602; 3 Mich. Jur., Chattel Mortgages and Conditional Sales, § 2, p. 889, and § 3, p. 893; Annotation, 168 A. L. R. 359.

The defendant contended in the lower court that even if the trust receipt transaction was invalid, yet plaintiff's loss was not caused by the act of the defendant but by the failure of the plaintiff properly to file a statement of its intention to engage in trust receipt financing with Lee as provided by § 6-562 of the Act. The trial

court held that a decision by it on that point was unnecessary after deciding that the trust receipt transaction was valid and consequently that there was no proof of fraud. Under an assignment of cross error the defendant here contends that its acts, even if fraudulent as a matter of law, were not a proximate cause of the plaintiff's loss.

Section 6-562 provides that an entruster may file with the State Corporation Commission and in the clerk's office where miscellaneous liens are recorded in the county or city in this State of the residence or principal place of business of the trustee a statement containing the matters set forth in that section. While the filing is permissive, the penalty for failing to file is set forth in § 6-557, which provides that the entruster's security interest "under the written terms of a trust receipt transaction" is void as against lien creditors who become such after thirty days from the delivery of the goods and without notice of such interest and before filing. By the same section a trustee in bankruptcy, from the time of the filing of the petition in bankruptcy, stands in the position of a lien creditor without notice on behalf of all creditors.

It is true that the trustee in bankruptcy asserted his right to take over the appliances on the ground that there had been no proper filing by the plaintiff. But it is also true that had the filing been done it would have been legally ineffective to give the plaintiff a lien superior to the right of the trustee in bankruptcy.

In the first place, the transaction was not a valid receipt transaction such as the filing provisions of the Act contemplate. It was, as stated, no more than a chattel mortgage. Section 55-96 of the Code provides that a chattel mortgage, where possession is allowed to remain with the mortgagor, is void as to purchasers for value without notice and lien creditors until duly admitted to record. The trustee in bankruptcy occupied the position of a lien creditor as to these appliances under § 70(c) of the Bankruptcy Act. 11 U. S. C. A., § 110 (c). 2 Mich. Jur., Bankruptcy, § 72, p. 737; *United States* v. *Eiland*, 4 Cir., 223 F. 2d 118, 123.

In the next place, the purported trust receipt being only a chattel mortgage and given on a shifting stock of merchandise, was void and of no effect as to creditors and purchasers without actual knowledge of plaintiff's lien. *Boice* v. *Finance and Guaranty Corp.*, 127 Va. 563, 102 S. E. 591, 10 A. L. R. 654; *General Credit* v. *Winchester, Inc.*, 196 Va. 711, 85 S. E. 2d 201. In the *Boice* case it was said: "Property bought for the express purpose of daily indiscriminate sale

to the general public, exposed for such sale at the place of business of a licensed dealer, and over which the dealer is permitted to exercise the dominion of owner, cannot be made the subject of a valid chattel mortgage, regardless of its size, value or capacity for identification." 127 Va. at 569-70, 102 S. E. at 593.

Therefore, the trust receipt which the plaintiff was induced by the representation of the defendant to accept as valid was in fact from its inception void and worthless as to all creditors and purchasers without actual notice. Neither filing a notice under the Trust Receipts Act nor the recording of the instrument as a chattel mortgage (which in fact was not recordable because not acknowledged, Code § 55-106) would have added anything to its validity or its value and would have been a futile act.

The lien of the trustee in bankruptcy was therefore superior to the lien of the plaintiff under the purported trust receipt in any aspect of the matter, regardless of any filing or recording that might have been done. The fact that the trustee in bankruptcy asserted his superior right on the ground that the plaintiff had not filed the statutory notice of the transaction, without considering, and doubtless without knowing, the inherent invalidity of the trust receipt transaction, cannot serve to insulate the original legal fraud of the defendant from being the cause of the plaintiff's loss. The real cause of that loss traces directly back to the misrepresentation of the defendant which induced the plaintiff to buy the instrument which was invalid and ineffective to give to the plaintiff the security interest for which it paid the defendant. It is agreed that the plaintiff would not have purchased the instrument if it had known the true facts and certainly if it had not bought the invalid instrument it would not have lost its money.

The judgment below is accordingly reversed and final judgment will be entered here for the plaintiff for $1,049.78, the agreed amount of its damages, with interest from April 11, 1956, the date of the judgment appealed from.

*Reversed and final judgment.*