367 F.2d 178
 In the Matter of ROBERT HATCH ASSOCIATES, INC., Bankrupt.
COMMERCIAL CREDIT EQUIPMENT CORPORATION, a Creditor, Appellant,
v.
Phillip J. McNELLIS, as Trustee for the Bankrupt, Appellee.
 No. 1, Docket 30380.
 United States Court of Appeals Second Circuit.
 Argued Sept. 20, 1966.
Decided Oct. 17, 1966.
 
 Thomas V. Dadey, Syracuse, N.Y. (Deegan, Dettor & Murphy, Syracuse, N.Y., on the brief), for appellant.
 Michael L. Supnik, Syracuse, N.Y. (Eugene H. Klein, Syracuse, N.Y., on the brief), for appellee.
 Before LUMBARD, Chief Judge, and WATERMAN and ANDERSON, Circuit judges.
 ANDERSON, Circuit Judge.
 
 
 1
 This is an appeal from an order of the United States District Court for the Northern District of New York affirming an order of the Bankruptcy Referee which declared invalid, as trust receipts, six financing transactions between appellant Commercial Credit Equipment Corporation and the bankrupt, Robert Hatch Associates, Inc. We affirm the order.
 
 
 2
 The appellant specializes in the financing of heavy equipment; and the bankrupt is a dealer in farm equipment. On five of the transactions in question, appellant advanced money to the bankrupt and took back a security instrument covering various pieces of farm equipment; on the sixth, the appellant transferred farm equipment to the bankrupt and took back a security instrument covering that equipment. In each case the security instrument was labeled 'trust receipt' and was filed as a trust receipt pursuant to New York Personal Property Law, McKinney's Consol.Laws, c. 41 (hereafter NYPPL) 58-e. The question presented on appeal is whether these six financing arrangements were in fact trust receipt transactions, as claimed by appellant, or whether five of them were chattel mortgages and the sixth a conditional sale as held by the court below. If the transactions were in reality five chattel mortgages and one conditional sale, then they failed to create valid security interests because they were not properly filed pursuant to New York Lien Law, McKinney's Consol.Laws, c. 33, 230 and NYPPL 65, respectively, governing those kinds of security arrangements.
 
 
 3
 The trust receipt originally evolved as a security instrument in the financing of import purchases. Later its use became widespread in the financing of purchases by domestic automobile dealers from manufacturers. See generally Gilmore, Security Interests in Personal Property (1965) (hereafter Gilmore) 4.2-4.3. The transaction involved three parties: the lender (entruster), the debtor-buyer (trustee), and the seller. Courts encumbered the trust receipt with technical requirements concerning the proper sequence of the various elements of the transaction. See, e.g., In Re A. E. Fountain, Inc., 282 F. 816 (2d Cir. 1922), cited to us by the appellee-trustee in bankruptcy, which held that the 'title' of the lender must be 'derived' from someone other than the debtor.
 
 
 4
 In 1933 the Commissioners on Uniform State Laws promulgated the Uniform Trust Receipts Act (hereinafter UTRA). Among the purposes of that act were the validation of the trust receipt as a method of secured financing and the elimination of the overly technical requirements that had been imposed by the courts. Commissioner's Prefatory Note to UTRA (hereafter CPN) A(1); Gilmore 4.6. The In Re Fountain doctrine was expressly rejected by UTRA 2(1): 'The security interest of the entruster may be derived from the trustee or from any other person * * *' The definition in UTRA 2(1)(a) of a trust receipt covering goods was such that the elements of the transaction might occur in any sequence as long as the entire transaction was the financing of a new acquisition by the debtor, provided it was for one of the purposes listed in 2(3). CPN A(3)(c); Gilmore 4.6. One of the intended functions of these provisions, as well as of the definitions in 1, was to differentiate the trust receipt from the ordinary chattel mortgage and conditional sale. CPN A(2), A(3)(a).
 
 
 5
 In 1934 UTRA was adopted almost verbatim by the New York legislature. Its provisions now appear in NYPPL 50-58-m.[1] These sections have been repealed by the adoption of the Uniform Commercial Code in New York, but they govern the case before us because all of the transactions occurred prior to the effective date of the Code, September 27, 1964.
 
 
 6
 In four of the transactions in the present case (Exhibits 3, 4, 6 and 7) the lender advanced money to the debtor and took back a purported trust receipt on goods already in the possession of the debtor. These were not goods previously delivered to the debtor which it was in the process of purchasing, but were items of the debtor's inventory which it happened to have on hand at the time it needed money. The fact that the goods were delivered to the debtor prior to the lender's advance does not in and of itself invalidate the transactions. UTRA 2(1)(a)(iii) (NYPPL 52(1)(a)(iii)) provides for a situation in which delivery does precede advance, but it requires that the lender acquire his security interest 'promptly' after delivery and 'as the result thereof.' What this somewhat cumbersome language means is that delivery of the goods to the debtor may precede the lander's advance if the entire transaction is the financing of a new acquisition by the debtor. At common law the trust receipt in goods was never used other than to finance new acquisitions, and UTRA was not intended to broaden this restriction in any way. CPN A(3)(c); Gilmore 4.4; In re Chappell, 77 F.Supp. 573, 575-576 (D.Or.1948); B-W Acceptance Corp. v. Benjamin T. Crump Co., Inc., 199 Va. 312, 99 S.E.2d 606 (1957). When a few states amended UTRA to include security interests in goods already owned by the debtor,[2] Professor Karl Llewellyn, the draftsman of UTRA, vigorously attacked the amendments which he described as 'disemboweling.' Handbook of the National Conference of Commissioners on Uniform State Laws 105 (1938). Gilmore 4.10.
 
 
 7
 The four transactions in this case were clearly not financings of new acquisitions because the lender's security interest was nor acquired 'promptly,' and therefore they were not valid trust receipt transactions.
 
 
 8
 The fifth transaction (Exhibit 8 varies slightly from the first four. The debtor was in the process of negotiating the purchase of the assets of another corporation when the lender advanced money to help the debtor close the deal. The goods on which the lender took a trust receipt were for the debtor's inventory so that the 'purpose' requirement of UTRA 2(3) (NYPPL 52(3)) was satisfied. However, the goods covered by the trust receipt included not only items being purchased by the debtor but also goods which the debtor already owned and which were not involved in the purchase. As the these latter goods the trust receipt was not valid for the reasons set forth above. As to the goods being purchased, the trust receipt would have been valid even if delivery preceded advance. Unfortunately for the lender, however, it was completely unable to specify which of the goods covered by the instrument were involved in the purchase and which were those already owned by the debtor at the time. Consequently the entire transaction was invalid.
 
 
 9
 The sixth transaction (Exhibit 2) is different from the other five. Here the lender transferred to the debtor goods which the lender had repossessed from other debtors and took back from the debtor a purported trust receipt covering the same goods. UTRA 2(1)(a) (NYPPL 52(1)(a)) permits delivery by the lender, and there was here a proper UTRA 2(3) (NYPPL 52(3)) purpose. But the transaction did not comport with the statutory definition of 'entruster,' UTRA 1(3) (NYPPL 51(3)). Although there is a semantic argument that appellant is not a seller of goods for profits, the trial judge found to the contrary, since a necessary and continuing part of its business was the selling of repossessed goods. The purpose of this definition is to exclude the conditional sale by prohibiting any 'true seller' from being an entruster. CPN A(3)(a); Gilmore 4.4. This definition voids the transaction.
 
 
 10
 Appellant suggests as a last resort that, since its purported trust receipts were in fact filed, no diligent creditor could have been deceived, even though they were filed under the wrong designation of security transaction, because he would have checked all files, not merely the chattel mortgage file. However true that may be, appellant is not relieved of its obligation to file its security interests as prescribed by statute. Trust receipts have never been used other than to finance new acquisitions, and nothing in UTRA could have misled appellant to the contrary.
 
 
 11
 The order of the District Court is affirmed.
 
 
 
 [1]
 The portions which pertain most particularly to this appeal are 51(3), 52(1) and 52(3) which read as follows:
 51(3): 'Entruster' means the person who has or directly or by agent takes a security interest in goods, documents or instruments under a trust receipt transaction, and any successor in interest of such person. A person in the business of selling goods or instruments for profit, who at the outset of the transaction has, as against the buyer, general property in such goods or instruments, and who sells the same to the buyer on credit, retaining title or other security interest under a purchase money mortgage or conditional sales contract or otherwise, is excluded. 52(1): A trust receipt transaction within the meaning of this article is any transaction to which an entruster and a trustee are parties, for one of the purposes set forth in subdivision three of this section, whereby
 (a) The entruster or any third person delivers to the trustee goods, documents or instruments in which the entruster (i) prior to transaction has, or for new value (ii) by the transaction acquires or (iii) as the result thereof is to acquire promptly, a security interest * * * The security interest of the entruster may be derived from the trustee or from any other person, and by pledge or by transfer of title or otherwise. * * * 52(3): A transaction shall not be deemed a trust receipt transaction unless the possession of the trustee thereunder is for a purpose substantially equivalent to any one of the following:
 (1) In the case of goods, documents or instruments, for the purpose of selling or exchanging them, or of procuring their sale or exchange; or
 (b) In the case of goods or documents, for the purpose of manufacturing or processing the goods delivered or covered by the documents, with the purpose of ultimate sale, or for the purpose of loading, unloading, storing, shipping, transhipping or otherwise dealing with them in a manner preliminary to or necessary to their sale; or * * *.
 
 
 [2]
 Appellant has cited us a case under one of these amended statutes: In re Boswell, 96 F.2d 239 (9th Cir. 1938). Of course, this case has no application under the New York act which was not so amended. Cf. In re Chappell, 77 F.Supp. 573 (D.Or.1948) rejecting cases under the California amended statute