CROWN CENTRAL PETROLEUM
CORPORATION, Plaintiff,

v.

Arthur T. BRICE et al., Defendants.

Civ. A. No. 75–0361–R.*

United States District Court,
E. D. Virginia,
Richmond Division.

Jan. 27, 1977.

* And consolidated Civ. A. Nos. 75–0470–R, 75–0471–R and 76–0001–R.

J. Robert Brame, III, McGuire, Woods & Battle, Anne Marie Whittemore, Richmond, Va., Morton A. Sacks, Cable, McDaniel, Bowie & Bond, Baltimore, Md., Randolph A. Sutliff, Fairfax, Va., James H. Kelley, Larry D. Sharp, Washington, D. C., for plaintiff.

Edwin Gadberry, III, John B. Thompson, Robert B. Smith, Richmond, Va., Jerry S. Cohen, Michael D. Hausfeld, Washington, D. C., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiff, Crown Central Petroleum Corporation, a supplier of gasoline, brought this action against several of its gasoline station dealers asserting pendent state statutory and common law claims and praying for a declaratory judgment as to its entitlement to repossess certain gasoline stations owned by it and leased to the respective dealers. The corporate plaintiff sought monetary, injunctive and declaratory relief. Separate actions were filed by the dealers, some of whom were designated Tidewater Dealers and others Richmond Dealers, and were ordered consolidated with the instant one and treated as counterclaims. The Court, deeming it proper so to do, severed the dealers' Sherman Act and Robinson Patman Act counterclaims which alleged vertical price fixing, tying arrangements and price discrimination. Severed as well was the corporate plaintiff's Sherman Act conspiracy claims against the dealers and its state law claims for conspiracy to defraud and injure Crown in its business and reputation. Jurisdiction over the subject matter of this controversy is premised upon 28 U.S.C. § 1332 and 15 U.S.C. §§ 22 and 26.

A trial on Crown's declaratory judgment count reference the repossession of its stations and the dealers' counterclaims for alleged breach of contract and fraud resulted in substantial judgments in favor of the respective dealers against Crown. At the close of the evidence, Crown moved for a directed verdict. Pursuant to the admonitions of *Phoenix Savings and Loan, Inc. v. Aetna Cas. & Surety Co.*, 427 F.2d 862, 873–74 (4th Cir. 1970), the Court reserved its ruling. In light of the jury verdict heretofore referred to, Crown now moves pursuant to Fed.R.Civ.P., Rule 50, for judgment notwithstanding the verdict, or, alternatively, for a new trial. The motion has been briefed by counsel, the Court has had the benefit of the transcript of the evidence introduced at the trial, has heard argument of counsel and the matter is ripe for disposition.

I. Motion for a Directed Verdict or a Judgment Notwithstanding the Verdict:

■ The standard for directing a verdict and for entering a judgment notwithstanding the verdict are equivalent. *Hawkins v. Sims*, 137 F.2d 66, 67 (4th Cir. 1943). The Court must determine whether there is sufficient evidence to support the jury's verdict. In so doing all evidentiary conflicts are to be resolved in favor of the successful dealers, and they are to be given the benefit of all reasonable inferences. *See Gallick v. B & O Ry.*, 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963); *Continental Ore Co. v. Union Carbide Corp.*, 370 U.S. 690, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962); *Mays v. Pioneer Lumber Corp.*, 502 F.2d 106, 107 (4th Cir. 1974); *Burcham v. J. P. Stevens Co.*, 209 F.2d 35, 37 (4th Cir. 1954).

■ The dealers advanced two theories of liability—the first being that of breach of contract and the second fraud. The dealers' contractual claim is predicated upon their assertion that despite the expressed one year term contained in the respective leases, Crown had agreed to renew the leases provided that the dealers satisfactorily fulfilled their responsibilities to Crown. The ambiguity created in the respective leases by the use of the phrase "initial term" warranted the dealers in presenting evidence pertaining to representations to this effect made by authorized Crown personnel. In the Court's view, the acceptance by the jury of the dealers' construction of these representations is reasonable in light of the evidence adduced. Crown contended, however, that its decision not to renew the leases was based on legitimate business reasons, including improper payments made by dealers to Crown's supervisory personnel, undisclosed business interests of the dealers, and conflicts of interest. It being Crown's position that as to the payola, undisclosed business interests and conflicts of interest that regardless of the alleged and accepted representations, there was no breach of contract on its part. The dealers, while not denying the existence of the aforementioned improprieties, maintained that Crown was actually motivated by a desire to continue an existing illegal price fixing scheme. In short, the question of motivation was the focal point of the instant litigation.

■ The dealers contended that at the time of the non-renewals of the station leases there existed an illegal price fixing scheme and the decision on the part of Crown to not renew was in furtherance of that scheme. *See Dart Drug Corp. v. Parke, Davis & Co.*, 120 U.S.App.D.C. 79, 344 F.2d 173 (1965); *Osborn v. Sinclair Refining Co.*, 324 F.2d 566, 573–575 (4th Cir. 1963); *Phillips v. Crown Central Petroleum Corp.*, 395 F.Supp. 735, 760–764 (D.Md. 1975). Resale price fixing is a *per se* violation of the Sherman Act, 15 U.S.C. § 1. *Albrecht v. Herald Co.*, 390 U.S. 145, 151, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968); *Kiefer-Stewart Co. v. Joseph E. Segrams & Sons, Inc.*, 340 U.S. 211, 213, 71 S.Ct. 259, 95 L.Ed. 219 (1951). Illegal combinations to fix prices may be found where a wholesaler suggests prices and secures compliance by means which go beyond the mere announcement of the policy in a simple refusal to deal. *United States v. Parke, Davis & Co.*, 362 U.S. 29, 44, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960); *compare United States v. Colgate*, 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919). Illegal combinations exist wherever a retailer succumbs to coercion and unwillingly complies with a wholesaler's suggested pricing. *Albrecht v. Herald Co., supra*, 390 U.S. at 150 n. 6, 88 S.Ct. 869. The coercion used to force compliance with suggested pricing may take many forms. *Simpson v. Union Oil Co.*, 377 U.S. 13, 17, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964).

■ The Court has no difficulty in concluding that there was sufficient evidence to support a jury finding for an illegal price fixing scheme as of the spring of 1974. The dealers testified that Crown pressured them to follow Crown's "pricing philosophy". Crown's marketing success was dependent upon high volume retail sales which, in part, require lower retail prices than those charged by major oil companies. Thus, Crown had a greater interest in controlling retail sales prices than might ordinarily be

the case. The use of a short term lease, such as in the instant case, and the oral representations of anticipated renewals provided a dealer performed to Crown's satisfaction, coupled with Crown's expectation that their suggested prices would be followed and the related continual supervision, suggest elements of pressure which might well coerce a dealer to unwillingly adhere to Crown's pricing formula. The dealers generally found it to be in their self interest to post Crown's suggested prices until the spring of 1974. At that time, the Federal Energy Office authorized a 2¢ per gallon price increase at the pump. The dealers sought to take advantage of this opportunity to increase their profits. Crown vigorously opposed the dealers' decision to raise prices. Most of the dealers, for at least a short time, resisted Crown's efforts. The evidence reflects that this was the first time that Crown had met resistance in setting retail prices. The jury could have reasonably concluded that Crown's efforts to determine pump prices transcended lawful persuasion and amounted to unlawful coercion. *Compare Ford Motor Co. v. United States*, 335 U.S. 303, 316–319, n. 3, 69 S.Ct. 93, 93 L.Ed. 24 (1948) *with United States v. Parke, Davis & Co., supra*, 362 U.S. at 44, 80 S.Ct. 503.

Crown argues, however, that there was no evidence introduced of price fixing subsequent to the spring of 1974. In fact, leases of all the dealers were renewed in November of that year notwithstanding their resistance to Crown's pricing policy. The absence of a price fixing combination as of the date of the non-renewal of the leases would preclude a finding that the decision to convert the stations to company operated—as opposed to dealer operated— was, in itself, illegal. *Dart Drug Co. v. Parke, Davis & Co.*, 120 U.S.App.D.C. 79, 344 F.2d 173 (1965); *Lamarca v. Miami Herald Publishing Co.*, 395 F.Supp. 324, 328 (S.D.Fla.), *aff'd*, 524 F.2d 1230 (5th Cir. 1975). *Cf., David R. McGeorge Car Co., Inc. v. Leyland Motor Sales, Inc.*, 504 F.2d 52, 56 (4th Cir. 1974). The Court, frankly, finds this aspect of Crown's contention appealing. The dealers, however, are entitled to all

reasonable inferences which may be drawn from the evidence. The dealers portrayed Crown as having engaged in a systematic pattern of terminating its dealers whenever resistance to its setting the pump prices was evident. Evidence was adduced relating to alleged price fixing problems arising in Northern Virginia and Maryland. This evidence in combination with the fact that many dealers returned to the practice of following Crown's suggested price after the 1974 incident support an inference of an ongoing price fixing conspiracy.

The question of whether Crown was motivated by legitimate business concerns including improper payments and undisclosed interests, or by the desire to further an existing price fixing scheme was an issue presented to the jury. They found for the dealers. Given the limitations on the Court's ability to disturb a jury verdict, and the Court's conclusion that there is evidence, as heretofore referred to, upon which the jury could rely, Crown's motion for judgment notwithstanding verdict as to liability under the dealers' contract theory must be denied.

The dealers' fraud theory centers upon the representations made by Crown personnel concerning the renewals of the leases "[W]hen one represents as true that which is not true, and another relies thereon to his damage, the latter may recover for the false representation whether it was knowingly or innocently made. . . . The intent of the party making the representation is immaterial." *B–W Acceptance Corp. v. Benjamin T. Crump Co.*, 199 Va. 312, 99 S.E.2d 606, 609 (1957), citing *Packard Norfolk v. Miller*, 198 Va. 557, 95 S.E.2d 207 (1956). *See also Jefferson Standard Life Ins. Co. v. Hedrick*, 181 Va. 824, 834, 27 S.E.2d 198, 202 (1943). Clear, cogent and convincing evidence must be presented to prove a claim of fraud under Virginia law. *Martin v. Williams*, 194 Va. 437, 73 S.E.2d 355, 359 (1952). The Court is satisfied that some evidence was presented which went to each of the elements of fraud, with, perhaps, the exception of the detrimental na-

ture of the dealer's reliance. Such evidence was less than clear and convincing.

■ The jury, in determining damages, was instructed only on the basis of the contract theory. No instruction was requested, or given, with regard to the measure of damages under a theory of fraud. Thus, as to this aspect, there is no verdict to set aside. Accordingly, Crown's motion for judgment notwithstanding in this regard must be denied.

## II. Motion for a New Trial:

■ Crown's alternative motion for a new trial is, in the Court's view, well taken. In ruling on this motion, the Court enjoys a greater degree of discretion than when ruling on a motion for a directed verdict. *See generally*, 9 Wright and Miller, Federal Practice and Procedure, § 2531 (1971); 5 Moore's Federal Practice ¶ 50.03[2] (2d ed. 1975). The Court is free in considering this motion to consider the credibility of the witnesses and the weight of the evidence. 9 Wright and Miller, Federal Practice and Procedure § 2531 p. 575 (1971). Judge Parker's classic statement on the different standards between directing a verdict and ordering a new trial is worthy of restating here:

"The distinction, however, is clear. Where there is substantial evidence and support of plaintiff's case, the judge may not direct a verdict against him, even though he may not believe his evidence or may think that the weight of the evidence is on the other side; for, under the constitutional guarantee of trial by jury, it is for the jury to weigh the evidence and pass upon its credibility. He may, however, set aside a verdict supported by substantial evidence where in his opinion it is contrary to the clear weight of the evidence, or is based upon evidence which is false; for, *even though the evidence be sufficient to preclude the direction of a verdict, it is still his duty to exercise his power over the proceedings before him to prevent a miscarriage of justice. See Felton v. Spiro* (C.C.A. 6th) 78 F. 576. A verdict can be redirected only where

there is no substantial evidence to support recovery by the party against whom it is directed or where the evidence is all against him or so overwhelmingly so as to leave no room to doubt what the fact is. *Gunning v. Cooley*, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720. A verdict may be set aside and a new trial granted, when the verdict is contrary to the clear weight of the evidence, or whenever in the exercise of a sound discretion the trial judge thinks this action necessary to prevent a miscarriage of justice."

*Garrison v. United States*, 62 F.2d 41, 42 (4th Cir. 1932). (emphasis added)

■ A new trial is clearly compelled on the issue of damages. The dealers' evidence of damages was primarily introduced through the testimony of their reputed expert, Robert R. Rippley. Crown timely objected to the Court's permitting Mr. Rippley to testify on the grounds that, amongst other reasons, the details of his testimony had not been timely disclosed to it as required by the Court's pre-trial order. Mr. Rippley's testimony was admitted subject to Crown's motion to preclude same, which the Court held under advisement. The Court is now satisfied that its failure to sustain this motion may well have resulted in an injustice. In light of the testimony given by Mr. Rippley, it was unfair to force Crown to cross-examine him on a report which was not previously disclosed as mandated by the rules of this Court. Absent Mr. Rippley's testimony, there was no evidence before the jury upon which it could intelligently assess damages in any manner other than speculation. *See Cecil Corley Motor Co., Inc. v. General Motors Corp.*, 380 F.Supp. 819, 854–55 (M.D.Tenn.1974). The Court further concludes that even in light of Mr. Rippley's testimony the damages awarded were grossly excessive. *See Great Coastal Express Inc. v. International Brotherhood of Teamsters*, 511 F.2d 839 (4th Cir. 1975).

Additionally, the Court has concluded that a new trial as to liability is likewise appropriate. Mr. Rippley's testimony as to damages contained reference to industry custom and usage regarding lease renewals.

This, to state the obvious, goes to the heart of the dealers' breach of contract claim and additionally is relevant to the question of fraud. The improperly admitted evidence thus goes to both liability and damages. ". . . [A] new trial on less than all the issues are proper only where the issues to be retried are separate from the rest of the case." *Young v. International Paper Co.*, 322 F.2d 820, 822 (4th Cir. 1963). The Court is not satisfied that Mr. Rippley's testimony did not affect the jury's conclusion as to the question of liability. Indeed, in the Court's view, the more reasonable conclusion is that it did. Accordingly, justice requires that both issues be retried. *Cf., United Construction Workers v. Haislip Baking Co.*, 223 F.2d 872, 879 (4th Cir. 1955); *Great Coastal Express, Inc. v. International Brotherhood of Teamsters, supra*, 511 F.2d at 847.

While the improper admission of Mr. Rippley's testimony alone warrants the granting of a new trial, several other factors weigh in the Court's conclusion. First, the jury's finding that Crown was engaged in an ongoing vertical price fixing scheme at the time it declined to renew the dealers' leases is, in the Court's view, contrary to the clear weight of the evidence. The dealers testified that competition—not Crown's pressure—was the primary consideration in setting pump prices. Indeed, at least one dealer voluntarily offered to testify on behalf of Crown in a lawsuit involving a similar claim raised by Crown dealers in Maryland. The clear weight of the evidence also supports Crown's contention that it did not renew at least two dealers' leases because of business impropriety. The jury concluded otherwise. One dealer was the architect of a scheme wherein the dealers paid certain sums to Crown's supervisor for the particular area. Another dealer was a Crown representative responsible for supervising the area stations and who surreptitiously obtained a dealership through the concealment of the true ownership.

The Court must, and does, acknowledge its share of the responsibility for what it views as a verdict cutting against the clear weight of the evidence. The special interrogatory submitted relating to the dealers' assertion of an antitrust claim failed to inquire whether the alleged price fixing scheme was in existence contemporaneously with the decision not to renew the leases. While this point was covered in the general instructions given by the Court, the failure of the Court to so specify in the interrogatory itself may have created confusion. Similarly, the interrogatory relating to fraud made no inquiry into whether the dealers' reliance upon Crown's false representations with regard to renewal of the leases was detrimental. Moore succinctly stated, the Court is not satisfied that the jury's findings were predicated upon a sufficiently clear charge.

While there is sufficient evidence to preclude the directing of a verdict, the Court's failure to exercise its discretion to order a new trial in the interest of justice would be a dereliction of its responsibility.

As the original severance of counts into separate trials was necessitated by the existence of an outstanding injunction which has since been dissolved, the Court envisions no reason why all the claims cannot be tried in a single proceeding. Moreover, the Court is further satisfied that the evidence relating to the Tidewater dealers and the Richmond dealers is sufficiently different so as to warrant separate trials as to them. The Court's disposition of Crown's motion for a new trial forecloses the dealers' motion for an entry of judgment as to liability for the the antitrust claims on the basis of *res judicata*.

An appropriate order will issue.