# CIRCUIT COURT OF ROCKINGHAM COUNTY

Steven R. Lucas

v.

Teresa Becks

Case No. CH99-17143

In re Steven R. Lucas

Case No. CH99-J2210

Commonwealth of Virginia,
Department of Social Services,
Division of Child Support Enforcement,
ex rel. Teresa Becks

v.

Steven R. Lucas

Case No. J-2066

June 20, 2000

BY JUDGE JOHN J. MCGRATH, JR.

The procedural posture and factual background in this case are, to say the least, strange. This case is currently before this court, in docket No. CH99-17143, pursuant to Virginia Code § 8.01-428 on the motion of petitioner, Lucas, requesting that this Court, among other things, enter an order declaring that a September 13, 1993, order of the Juvenile and Domestic Relations

Court was procured and obtained by the fraudulent representations of the Defendant, Teresa Beck, while she was under oath. This case was previously before this Court as an appeal from an order dated June 8, 1998, of the Juvenile and Domestic Relations District Court dismissing the defendant's petition for parental blood testing on the grounds that paternity had been conclusively established by an Order of the Juvenile and Domestic Relations Court dated September 13, 1993. In that case, this Court denied Petitioner relief, stating that "the only way a final decree can be set aside for fraud upon the Court is pursuant to a separate equity action commenced under § 8.01-428 of the Code of Virginia. Such an action is not now before the Court." (See Opinion and Order, Case No. J-2066, December 10, 1998.)

Due to the procedural posture of this case, it is necessary to explain, in some detail, the facts that led to the current proceeding. Around April 25, 1992, Ms. Teresa Becks gave birth to a son who she named B.L.B. At the time of the child's birth, Ms. Becks was on public assistance and the Department of Child Support Enforcement became involved in seeking child support on behalf of B.L.B. It is undisputed that when asked to identify the father, Ms. Becks gave the name of an individual named "P.J.". Shortly thereafter, DCSE arranged DNA testing for a conclusive determination of paternity for B.L.B. Although the results are not part of this record, it is stipulated that the individual known as "P.J." was conclusively determined *not to be* the father of B.L.B. When confronted with this information, Ms. Becks then named as the father the current defendant, Steven R. Lucas.

On January 26, 1993, the DCSE filed a petition for an award of child support enforcement naming as the putative father the respondent Steven R. Lucas, who, at that time, was incarcerated in the Page County Jail. John Q. Adams, Esq., of the Bar of this Court was appointed to represent Mr. Lucas in these paternity/child support proceedings. On April 26, 1993, Mr. Adams filed on behalf of Mr. Lucas an answer to the petition for child support denying that he was the father of B.L.B. and demanding that a blood test be ordered to prove that he was not the father. Sometime between the filing of the petition and the filing of the answer, the defendant was released from the Page County Jail and returned to his home in Elkton, which is located in Rockingham County, Virginia.

On June 21, 1993, the J. & D.R. Court entered an Order requiring that the child, Ms. Becks, and Mr. Lucas appear at the DCSE offices in Verona, Virginia, on June 29, 1993, for the purposes of having blood drawn for DNA testing. Mr. Lucas failed to appear at the testing location. Because of Mr. Lucas's failure to appear for the first blood test at the DCSE offices, a second notice was mailed to him at this home address indicating that the DNA testing

for him had been rescheduled for July 6, 1993. On July 6, 1993, Mr. Lucas again did not appear at the DCSE office for the purpose of having his blood drawn.

On the motion of the DCSE, a show cause summons was issued on July 21, 1993, demanding that Mr. Lucas appear in J. & D.R. Court on September 13, 1993, to show cause why he had failed to comply with the prior Court orders requiring blood testing on June 29, 1993, and July 6, 1993. At the show cause hearing on September 13, 1993, Ms. Becks, Mr. Lucas's counsel, and a representative from DCSE appeared. Mr. Lucas, however, never appeared in Court on that day.

After the proceeding in J. & D.R. Court was concluded, the Court entered an Order ruling that Steven R. Lucas was the father of B.L.B. Shortly thereafter, the DCSE entered an administrative order requiring Mr. Lucas to pay the amount of $65.00 per month in child support beginning on October 1, 1993.

The record contains a letter which was introduced by the DCSE and which was received by them on September 27, 1993. This letter, dated September 23, 1993, and from Mr. Lucas, once again asserted that he was not the father of B.L.B. and that he wanted to take a blood test to prove such. The letter further stated that because he was unemployed and did not have a driver's license, he had no way of attending the test that was administered in Verona.

The matter lay dormant thereafter until June 6, 1997, when a civil show cause summons was issued against the defendant for him to appear in Court to show cause why he should not be imprisoned for failure to comply with the administrative support order. This matter was heard on July 28, 1997, and Mr. Lucas was given six months in jail for civil contempt. While in jail, Mr. Lucas wrote the Judge of the Juvenile and Domestic Relations District Court. In a letter dated August 11, 1997, Mr. Lucas again insisted that he was not the father of Ms. Becks' child and that he again wanted to have a blood test to prove that he was not the father of the child. In response to this letter, the Honorable Charles S. McNulty, III, wrote a letter to Mr. Lucas at the Rockingham County Jail. This letter stated that he was in receipt of Mr. Lucas's most recent letter but that the order which he had entered on September 13, 1993, conclusively determined that Lucas was the father of B.L.B. and the "Order is final and not subject to change at this time."

After Mr. Lucas was released from jail, he apparently contacted an attorney to represent him in seeking to have the support order overturned. Mr. Sherwin Jacobs, Esq., a member of the Bar of this Court, undertook to represent Mr. Lucas in trying to obtain relief from the 1993 child support

order. When providing his attorney with the information for the filing of the petition, Mr. Lucas did not actually recall the name of the child of whom he had been declared the father and gave his attorney a name which was phonetically very close to B.L.B. as the child's name. His attorney then filed a motion for parental testing in the J. & D.R. Court on February 18, 1998, using the phonetically misspelled name of B.L.B. as the name of the child. Because of the misnomer of the child, this case was accidentally assigned a new Juvenile and Domestic Relations District Court docket number (even though the correct docket number was shown on the Petition that was on file). As a result, the J. & D.R. Court, on March 25, 1998, ordered a blood test of Mr. Lucas, Ms. Becks, and her son.

On April 13, 1998, the results of this test were filed in the Juvenile and Domestic Relations District Court file showing conclusively that Mr. Lucas was excluded from paternity and *could not be* the father of B.L.B. However, upon realizing that the test was being done on exactly the same child who was the subject of the paternity order entered on September 13, 1993, the J. & D.R. Court wrote on the face of the petition: "Order motion of Mr. Lucas is dismissed. See File No. J5929 entered September 13, 1993, which is a final order. This Court has no jurisdiction over parentage." It is from this Order that an appeal has been taken to this Court.

In this Court, two *ore tenus* hearings have been held at which evidence has been taken concerning the J. & D.R. Court hearing in September of 1993. In both of her appearances in this Court, Ms. Becks has testified under oath that in spite of the contradictory DNA evidence, she continues to be of the belief that Mr. Lucas is the father of her child, B.L.B. She has insisted upon this position in spite of the fact that while this matter was pending in this Court, a second DNA blood test has been done of a more eloquent variety than the first test and it also conclusively establishes that Mr. Lucas cannot be the father of B.L.B. The defendant has also offered evidence from a relative of Ms. Becks that there are other individuals who may well be likely candidates as the father of B.L.B., but none of this evidence was conclusive or even particularly persuasive as to exact identity of the father. One of the individuals named was subjected to a DNA test, and he also was excluded as the child's father.

The defendant takes the position that Ms. Becks has committed a fraud upon the Court by first insisting that an individual by the name of "P.J." was the father of B.L.B. and, upon his exclusion through DNA testing, then naming the defendant, Mr. Lucas, as the father. The defendant's position is that now that he has been excluded by scientific evidence as being the father, it is apparent that Ms. Becks committed a fraud upon the J. & D.R. Court

when she testified that he was the father. Therefore, argues the defendant, the Order of the J. & D.R. Court is null and void, or at least amenable to being set aside as having been the product of fraud.

In this proceeding, the Court has appointed a guardian *ad litem* for B.L.B. The guardian *ad litem* and the attorney for DCSE argue strenuously that the paternity order of September 3, 1993, has been, for some years, a final order and it is not subject to collateral attack in this proceeding. They argue that under the Court of Appeals' holding in *Slagle v. Slagle*, 11 Va. App. 341 (1990), and *Aviles v. Aviles*, 14 Va. App. 360 (1992), that an adjudication of paternity, even when shown to be patently incorrect by conclusive scientific evidence, is a final order and is binding upon the parties and is not subject to attack in a subsequent or collateral lawsuit.

The defendant argues equally strenuously that the two recent DNA tests conclusively establish that he is not the father of the child in question. Therefore, they argue, the decree of the lower court had to be entered pursuant to a fraud on the court perpetrated by the plaintiff when she apparently testified in the lower court that Mr. Lucas was the father of the child. The defendant points out that § 20-49.4 of the Code of Virginia requires that paternity must be established by "clear and convincing evidence." In view of the evidentiary requirements of § 20-49.4, the defendant further argues, the only evidence that could possibly have been available to the lower court was the uncorroborated testimony of the plaintiff that she had sexual intercourse with the defendant at the probable time of conception. The defendant then argues that in view of the fact that the plaintiff, in the Juvenile and Domestic Relations District Court, previously identified one "P.J." as the father and that the scientific testing subsequently excluded him as a possible parent, Ms. Becks' uncorroborated testimony by definition could not supply clear and convincing evidence of paternity. Therefore, the defendant argues, the original adjudication must be set aside as being the product of fraud.

Ms. Becks, in two *ore tenus* hearings before this Court, continues to insist that Mr. Lucas is the father of her child even though two scientific tests have proven otherwise. Although Ms. Becks may continue to insist, against all the contrary evidence, that the defendant is the father of her child, no matter how good faith her insistence may be, a rational observer has to come to the conclusion that she either knowingly or unknowingly perpetrated a fraud upon the lower court in providing testimony as to the identity of the father of her child. First, her testimony was obviously inherently suspect given that she originally had identified the wrong individual as the father. Secondly, in order for a court to make a finding of paternity on clear and convincing evidence, there would have to be testimony from the mother of the child that (1) she had

had sexual intercourse with the imputed father at or about the time of the conception and that (2) the was no one else who was a likely candidate for paternity. Without testimony meeting this minimal level, the J. & D.R. Court would not have possessed the clear and convincing evidence required by § 20-49.4 of the Code of Virginia. Since the lower court proceedings are presumed to be regular and based on legally sufficient evidence, it must be assumed that this minimal evidence was given by Ms. Becks to the J. & D.R. Court while under oath. Moreover, if that evidence was, in fact, presented to the Court, it was a fraud upon the Court irrespective of the mental state of Ms. Becks at the time she provided the testimony. *See e.g., B-W Acceptance Corp. v. Crump Co.*, 199 Va. 312, 315 (1957); *Packard Norfolk, Inc. v. Miller,* 198 Va. 557 (1956); *see also* 8B Michie's Jurisprudence, *Fraud & Deceit*, § 18.

That however, does not resolve the issue before this court. It is well established in Virginia that there are two kinds of fraud that may be perpetrated on the court; these two types are intrinsic fraud and extrinsic fraud. *See Peet v. Peet*, 16 Va. App. 323 (1993); *Jones v. Willard*, 224 Va. 602 (1983); *McClung v. Folks*, 126 Va. 259 (1919). Extrinsic fraud, as defined by the Virginia Supreme Court, consists of "conduct which prevents a fair submission of the controversy to the court." *Jones*, 224 Va. at 607. Examples of extrinsic fraud include acts such as keeping the unsuccessful party away from the court by a false promise, or keeping him ignorant of the suit. *See McClung*, 126 Va. at 270. Intrinsic fraud, on the other hand, is defined by the Supreme Court of Virginia as being fraud that includes "any means of obscuring facts presented before the court and whose truth or falsity as the issues being litigated are passed upon by the trier of fact." *Peet*, 16 Va. App. at 327 (citing *Jones*, 224 Va. at 607). Examples of intrinsic fraud are perjury or the use of forged documents. *Id.* "Although a judgment obtained by "extrinsic fraud" is void and, therefore, subject to direct or collateral attack, a judgment obtained by "intrinsic fraud" is merely voidable and can be challenged only by direct appeal or by a direct attack in an independent proceeding." *Id.* at 326 (citing *Jones* 224 Va. at 607; *Holmes v. Holmes*, 8 Va. App. 457, 458-59 (1989)).

In the case at hand, Lucas asserts that Becks is guilty of perpetrating a fraud upon the court. Although, as is evidenced by the previous discussion, this Court agrees with him, that fraud perpetrated by Ms. Becks was *intrinsic* fraud, not extrinsic. Ms. Becks obviously was not truthful in her testimony in the previous proceedings before both this Court and the J. & D.R. Court. Although this may constitute perjury, the fact remains that it is intrinsic fraud, and as such, cannot be attacked collaterally; it may only be attacked only by a direct appeal or direct attack. As early as 1919, the Supreme Court stated:

The trial is his opportunity for making the truth appear. If, unfortunately, he fails, being overborn by perjured testimony, and if he likewise fails to show the injustice that has been done him on motion for a new trial, and the judgment is affirmed on appeal, he is without remedy. The wrong, in such case, is of course, a most grievous one, and no doubt the legislature and the courts would be glad to redress it if a rule could be devised that would remedy the evil without producing mischiefs far worse than the evil to be remedied. Endless litigation, in which nothing was ever finally determined, would be worse than occasional miscarriages of justice; and so the rule is, that a final judgment cannot be annulled merely because it can be shown to have been based on perjured testimony; for if this could be done once, it could be done again and again *ad infinitum*.

*McClung*, 126 Va. at 19-20.

Aside from the issue of intrinsic or extrinsic fraud, in order for an independent action in equity to challenge a previous court decision, there are five elements that must be met. These elements, as set out by the Supreme Court of Virginia, include "the absence of fault or negligence on the part of the defendant." *Charles v. Precision Tune, Inc.*, 243 Va. 313, 318 (1992). In the case at hand, it cannot be said that the defendant, Lucas, has entered this suit with clean hands. In fact, the fault for the decision in the lower court lies with Lucas. Twice, he was scheduled for DNA testing, and twice he failed to show up. He was issued a show cause for this failure to show up, and he failed to attend court for the show cause and the hearing to determine paternity. Had Lucas fulfilled his obligation and shown up for any one of these three required appointments, he would not be in the predicament he is in now. It was only after he was imprisoned for failure to pay his child support obligation that he finally took action. His attorney was present at the paternity hearing, and it was at this stage that Becks' perjury should have been exposed. Furthermore, following the determination of paternity by the J. & D.R. Court, Lucas had an opportunity to appeal the case. He failed to do so, and the decision became final. It is because of Lucas's inaction and negligence that the case is now at this stage. Based on this, he cannot now collaterally attack the decision of the lower court.

Alternatively, Lucas has requested that, if this Court denies his motion to set aside the determination of paternity, this Court should modify his child support obligation due to a change in circumstances. The "change in circumstances" contemplated by the legislature in the child support provisions of the Virginia Code is *monetary* change in circumstances. *See e.g. Hammers*

*v. Hammers,* 216 Va. 30 (1975); *Crabtree v. Crabtree,* 17 Va. App. 81 (1993); *Kaplan v. Kaplan,* 21 Va. App. 542 (1996); Va. Code § 20-108.1. Lucas has not alleged any monetary change in circumstance in this case. The only "change in circumstances" he has alleged is the result of the paternity test. Since the previous determination of paternity that was done by the J. & D.R. Court stands and is not subject to an attack of intrinsic fraud, the results of the paternity test are not dispositive to this matter. As such, there is no material change in circumstances that would merit a finding of a decrease in child support.

Finally, Lucas, in his original Petition to Set Aside a Final Order, has also asked this Court to "(1) enter an order *nunc pro tunc* declaring that the Petitioner is not the father of the Defendant child, (2) enter an order immediately terminating the present order of support which is now in effect and declare any unpaid back child support which the Petitioner might owe to the Defendant, Teresa Becks, to be terminated and not subject to collection by her, (3) enter an order requiring the Defendant, Teresa Becks to repay to the Petitioner all child support payments which he has previously paid to her; and (4) enter such other orders as the Court may deem to be appropriate. . . ." In light of the foregoing discussion, this Court denies each motion.

The Clerk of the Court is directed to send certified copies of this order to Steven P. Roadcap, Esq., Assistant Attorney General, Counsel for DCSE; Sherwin J. Jacobs, Esq., Counsel for Defendant; and Thomas A. Howell, Esq., guardian *ad litem.*